**MESA PETROLEUM COMPANY, Plaintiff,**

v.

**C. John CONIGLIO, et al., Defendants.**

**MESA PETROLEUM COMPANY, Plaintiff-Appellee,**

v.

**Jay Nell LOCKE, Defendant-Appellant,**

**and**

**C. John Coniglio, Defendant.**

**No. 85–3386.**

United States Court of Appeals, Eleventh Circuit.

April 28, 1986.

---

Robert E. Austin, Jr., Leesburg, Fla., for defendants.

Stephen A. Hould, Jacksonville, Fla., Neil Bowman, Amarillo, Tex., for Mesa.

Steven Gray, Ocala, Fla., for Coniglio.

Before JOHNSON and HATCHETT, Circuit Judges, and MURPHY*, District Judge.

HATCHETT, Circuit Judge:

In this diversity action involving Florida real property, we hold that a party voluntarily destroyed a claimed interest in the subject real property, and that a successor judge properly entered judgment after a previous judge announced findings of fact and conclusions of law. We affirm.

## I. The Transactions

Between 1966 and 1970, C.A. and Jay Nell Locke, his wife, jointly with C. John Coniglio and Mary Jean Coniglio, his wife, acquired title to four tracts of real property in Florida. In the early '70's, the husbands, acting as shareholders of Diamond T Cattle Co., Inc. (Diamond T), a Florida corporation, entered into a joint venture with Mesa Petroleum (Mesa) through which they incurred debts to Mesa. Both husbands signed personal promissory notes payable to Mesa.

On September 12, 1974, C.A. and Jay Nell Locke executed a warranty deed conveying all their right, title, and interest in the four tracts to C. John and Mary Jean Coniglio. This transaction occurred only four days before the husbands signed the promissory notes to Mesa. On October 28, 1974, the two couples took three actions in connection with what Jay Nell Locke contends was a refinancing and partition arrangement. First, the September 12, 1974, Deed to the Coniglios was recorded in the public records of Sumter County, Florida. Second, a mortgage from the Coniglios to the Federal Land Bank on the four tracts of land was also recorded in the public records of Sumter County. Third, the Coniglios and Lockes executed an Agreement for Deed relating to Tract I of the four tracts, the effect of which was to leave title of Tract I in the Coniglios until the Lockes paid the Coniglios $217,678. This Agreement for Deed was never recorded.

In 1978, the district court found that the conveyance of the four tracts of land by the September 12, 1974, Deed was for the purpose of defrauding Mesa, and it imposed a constructive trust.

## II. The Cases

### A. Case No. 75–28

In No. 75–28, Mesa obtained a judgment against C.A. Locke and John Coniglio for debt. The district court first announced that it would set the September 12, 1974, conveyance aside and place a lien favoring Mesa on the tracts of real property. On being advised of the Florida law concerning entirety property, the district court issued an order requiring Coniglio to hold all the tracts of real property, including Tract I, in trust for Mesa. The order provided that the trust was subject only to the security interest of the Federal Land Bank of Columbia, South Carolina. The order also prohibited Coniglio from further encumbering or conveying the property. The court of appeals affirmed on the ground that the Florida courts had long recognized the equitable remedy used by the district court. *Mesa Petroleum Co. v. Coniglio*, 629 F.2d 1022, 1030 (5 Cir.1980) (citing *Bell v. Smith*, 32 So.2d 829 (Fla.1947)).

### B. Case 82–85

When Mesa began efforts to collect its judgment in 75–28, Jay Nell Locke and C.A. Locke sought to block the efforts. C.A. Locke attempted to assert a bankruptcy discharge as a bar to enforcement of the constructive trust. The district court rejected this effort and ordered Coniglio to sell the property for the benefit of Mesa. *See Mesa Petroleum Co. v. Coniglio*, 16 B.R. 1015, 1020 (M.D.Fla.1982).

As the sale approached, Jay Nell Locke filed an action in state court. She claimed an ownership interest in the property as a tenant by the entirety arising from the unrecorded Agreement for Deed dated October 28, 1974, as well as from her original

---

* Honorable Harold L. Murphy, U.S. District Judge for the Northern District of Georgia, sitting by designation.

ownership. She sought to enjoin Coniglio from carrying out the sale of Tract I pursuant to the district court's order.

Mesa filed suit in the district court seeking to enjoin Jay Nell Locke and Coniglio from proceeding with the state court action. In the federal suit, Mesa sought a declaratory judgment that its rights to the real property in the constructive trust were superior to the rights, if any, of Jay Nell Locke. Mesa also asked the court to consolidate the original case (75–28) with Mesa's action for injunction.

The district judge in 82–85 was The Honorable Charles R. Scott, the same judge who had presided in 75–28. The court consolidated the cases, and on December 6 and 7, 1982, it held a hearing. At the beginning of the hearing, the court announced findings of fact and conclusions of law, ruling in favor of Mesa. The court stated that it had already considered the claim that the Agreement for Deed involving Tract I created an entirety interest in Tract I, and had concluded that any such interest was subject to the constructive trust. The court concluded that because the positions of C.A. Locke and Jay Nell Locke were identical, C.A. Locke adequately represented Jay Nell Locke. The court also concluded that there was an implied agreement of Jay Nell Locke to be represented by C.A. Locke in the previous litigation, or to be bound by the results. Further, the court concluded that under the totality of the circumstances, Mesa had a justified expectation that Jay Nell Locke would be bound. The court also concluded that Mesa was substantially prejudiced by Jay Nell Locke's delay in asserting her claim and that the delay was unjustifiable in view of Jay Nell Locke's admission that she was aware of the litigation from its outset in 1975.

The court allowed Jay Nell Locke to proffer testimony in support of a rule 60(b)(4) and 60(b)(6) motion to set aside the order of preclusion as well as the earlier orders and judgments entered in 75–28. Jay Nell Locke offered an abstract of title to the properties, the October 28, 1978, Agreement for Deed, and her deposition.

Judge Scott stated in open court that he felt he had a better understanding of the case than before it was appealed. He concluded by saying:

> It looks like I've got some work to do to start out 1983. And hopefully I'll come up with the right decision at some appropriate time.

Judge Scott died before he could render a final decision. The case was reassigned to Judge John H. Moore, II. In July, 1983, Mesa filed a motion for entry of judgment. On March 12, 1985, the district court rendered a final summary judgment in favor of Mesa.

## III. Issues

We must decide three issues. First, did Judge Scott's oral pronouncement of findings of fact and conclusions of law suffice to authorize Judge Moore to enter a final judgment, and decide rule 60(b) motions for relief from judgment? Second, did the district court correctly bar Jay Nell Locke from litigating her claim to an entirety interest? Third, did the district court properly award attorney's fees to Mesa?

## IV. Authority of Successor Judge to Enter Order

### A. Summary of Contentions

Federal Rule of Civil Procedure 63 allows substitution of a judge upon disability only "after a verdict is returned or findings of fact and conclusions of law are filed." Jay Nell Locke contends that Judge Scott's announcement of his intended findings and conclusions did not meet the requirements of Rule 52 of the Federal Rules of Civil Procedure. Under rule 52, findings of fact and conclusions of law are sufficient if "stated orally and recorded in open court following the close of evidence." Jay Nell Locke contends that Judge Scott received evidence in the hearings on December 6 and 7 that bore upon and altered his understanding of the case. Jay Nell Locke cites *Arrow-Hart, Inc. v. Philip Carey Co.*, 552 F.2d 711 (6th Cir.1977) for the principle that a successor judge may not enter judg-

ment in the absence of unanimous agreement of the parties where the disabled judge did not satisfy the requirements of rule 52.

Mesa replies that Judge Scott announced extensive findings of fact and conclusions of law in open court and that the hearing on December 6 and December 7 concerned only Jay Nell Locke's motion for relief from the order of preclusion pursuant to rule 60. Mesa argues that the motion merely duplicated what had previously been argued and presented on the issues. Mesa suggests that Judge Scott's comment that he understood the case better than before after the two days of hearings resulted from the presence in the hearing of issues other than those concerning the order of preclusion.

### B. Discussion

■ For two reasons, Judge Moore had authority to enter judgment. First, Judge Scott had already drafted an order which he read orally in open court. We are not cited authority showing that the taking of evidence pursuant to a rule 60(b) motion after the oral pronouncement of findings and conclusions deprives the findings of fact and conclusions of law of legal authority. More important, the resolution of the case on summary judgment distinguishes this case from holdings cited by Jay Nell Locke that involved a bench trial in progress upon the death of the presiding judge. Where a successor judge considers a transcript as "supporting affidavits," an award of summary judgment is appropriate if there is no genuine issue as to any material fact. See Bromberg v. Moul, 275 F.2d 574, 576 (2d Cir.1960). The issues decided by Judge Moore were legal issues based upon an undisputed factual record.

We hold that Judge Moore properly entered summary judgment as successor to Judge Scott.

### V. Jay Nell Locke's Claim to an Entirety Interest

#### A. Contentions

Jay Nell Locke argues that the district court holdings deprive her of due process by denying her a hearing on her property interests. She argues that an entirety interest is not subject to the individual debts of one spouse absent the joinder of the other spouse in the underlying lawsuit. She argues that the October 28 transaction was a financing arrangement and points to the district court's sustaining of the Land Bank's mortgage as evidence supporting this theory.

Regarding the original entirety interest, Locke argues that the court of appeals erred in finding fraud and in imposing a constructive trust on this real property. Locke argues that a constructive trust only exists to prevent unjust enrichment and that Mesa could not have reached the property for satisfaction of its judgment because it was exempt. Thus, Jay Nell Locke's case rests, in part, on a claim that the court of appeals erred.

Mesa's argument is that Jay Nell Locke conveyed her entirety interest; she lost it at the point that she conveyed it; Mesa gained an interest by operation of law; it was then too late for the Coniglios to reestablish the entirety interest through an Agreement for Deed.

Jay Nell Locke responds that the delivery of the Deed to the Coniglios, the event creating the constructive trust, may have occurred simultaneous with the reconveyance of Tract I to the Lockes by Agreement for Deed. Mesa argues that Jay Nell Locke should be bound to the results of C.A. Locke's litigation in Case 75–28, in which C.A. Locke made a tenancy by entirety argument and either did raise or could have raised the theory that the October 28 Agreement for Deed did not chronologically follow the constructive trust. Jay Nell Locke does not attack the district court's factual findings that her conduct showed agreement to be bound and that she induced reliance by Mesa; instead, she attempts to distinguish the legal authority on which the court relied to find that C.A. Locke represented her interests.

#### B. Discussion

■ The rationale for imposing a constructive trust was that Jay Nell Locke

voluntarily destroyed her entirety interest by conveying it to the Coniglios. Thus, the destruction of the entirety interest did not violate the rule that neither spouse may sell, forfeit, or encumber any part of the estate without the consent of the other. *See Smith v. Hindery,* 454 So.2d 663 (Fla. 1st D.C.A.1984). Even though the automatic destruction of the entirety interest required court recognition before a legally enforceable beneficial interest could arise in Mesa, recognition of that beneficial interest did not prejudice Jay Nell Locke. She had lost her claim to the land based on the 1969 and 1970 purchases.

Locke cites *Ellis Sarasota Bank & Trust v. Nevins,* 409 So.2d 178 (Fla. 2d D.C.A.1982) for the principle that even if fraud was present, Mesa was required to join her as a party in order to reach the entirety interest.

■ *Ellis* stands for a narrower principle—that a plaintiff must join both tenants before an entirety account can be made available to answer for the judgment debts of one of the tenants. 409 So.2d at 182. Any claim that Jay Nell Locke might make to Tract I based on her 1970 purchase was too attenuated to have required her joinder before the court could impress a trust on it. Indeed, the court of appeals in effect reached this conclusion by holding that the equitable remedy was available despite the status of the Lockes as tenants by the entirety.

■ The second alleged entirety interest is that which Jay Nell Locke argues was created in Tract I by the October 28, 1974, Agreement for Deed with the Coniglios. Mesa's primary argument is that Locke is seeking to expand her ownership rights to include Mesa's beneficial interest, which preceded whatever entirety interest was created by the October 28, 1974, transaction. We agree that any entirety interest created on October 28, 1974, was subject to Mesa's equitable interest imposed in 75–28.

Jay Nell Locke additionally argues that the court of appeals simply erred in imposing the trust, not because she was not joined, but because the finding of fraud is inconsistent with the character of an entirety interest, which Mesa could not have reached. We reject this argument. No reason exists to open or attempt to reverse the decision and judgment of the Fifth Circuit in 75–28.[1]

Finally, Jay Nell Locke suggests different evidence might lead to a different decision. Only if Jay Nell Locke were treated as a stranger to 75–28 could she properly offer additional evidence as a basis for altering the decision of the court. The district court concluded that Jay Nell Locke implicitly agreed to be bound by the first decision and induced Mesa to believe it could rely on the adjudication without her joinder. On this basis, the court concluded she is not entitled to relitigate.

Although Florida law governs the relative property interests, federal law governs the preclusion principles in this diversity action. *Aerojet-General Corp. v. Askew,* 511 F.2d 710, 715–18 (5th Cir.), *cert. denied,* 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975). In the Eleventh Circuit, virtual representation can be inferred from the conduct of the parties. *See Cotton v. Federal Land Bank of Columbia,* 676 F.2d 1368 (11th Cir.1982); *Cleckner v. Republic Van and Storage Co., Inc.,* 556 F.2d 766, 770–71 (5th Cir.1977). When a case goes to trial, the question of whether a party is virtually representative of the interest of a non-party is one of fact for the district court. *Astron Industrial Associates, Inc. v. Chrysler Motors Corp.,* 405 F.2d 958 (5th Cir.1968). *See also Drier v. Zarpon Oil Company,* 522 F.2d 199 (5th Cir.1975)

---

1. In analyzing the rule 60(b) motion, the district court based its reasoning on a law of the case rationale, rather than preclusion. Thus, the district court considered whether a good reason to disregard the decision of the court of appeals existed. The district court found that the court of appeals decided correctly and that Locke's delay in seeking to challenge the judgment did not commend her to equity. In reaching this conclusion, the district court afforded Jay Nell Locke merits consideration.

(finding lack of genuine issue on summary judgment). This case was decided on a motion for summary judgment. Locke does not dispute the factual record of her conduct. Instead, she wishes to avoid the legal effect assigned to it by the district court.

■ The court also ruled that the question of laches was properly before the court because Locke sought an equitable remedy in the state court. The district court stated that Locke knew or should have known as early as mid-1975, and surely by late 1978, the potential adverse effect the transactions in September and October, 1974, could have on her entirety interest. Yet, she made no attempt to assert her claim until April 8, 1982, after her husband had made identical arguments both in the original case and in his own bankruptcy case. The court also noted that Jay Nell Locke offered no explanation for her long wait. We hold that the district court correctly found that, to the extent Jay Nell Locke sought to raise a new theory of the October 28 transaction, her conduct did not entitle her to litigate it.

We have held the following: First, the imposition of the trust did not affect Jay Nell Locke's original entirety interest because she had conveyed it; we will not disturb the previous court of appeals decision. Second, Jay Nell Locke fails on the merits in seeking to claim an entirety interest based on events after the constructive trust attached. Third, Jay Nell Locke is precluded from raising a theory based on speculation that new evidence might show that she revived an entirety interest before the constructive trust attached.

### VI. Attorney's Fees

■ The district court awarded attorney's fees on two theories. First, under section 57.105 Florida Statutes:

> The court shall award a reasonable attorney's fee to the prevailing party in any civil action in which the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party.

The court held that the claim to an interest arising from the October 28, 1974, Agreement for Deed that could defeat the constructive trust is devoid of merit. The district court viewed the finding of virtual representation as reenforcing this conclusion.

In the alternative, the court found that Mesa was entitled to attorney's fees pursuant to the terms of C.A. Locke's promissory note, because C.A. Locke was her alter ego.

We agree with the district court that Locke "persisted in framing an irrelevant issue" and that C.A. Locke was Jay Nell Locke's alter ego.

We affirm the district court's disposition of the merits and the award of attorney's fees to Mesa.

AFFIRMED.