Ishmael JAFFREE; Mozell Hurst Jaffree, on behalf of herself and all persons similarly situated; Jamael Akki Jaffree; Makeba Green; Chioke Saleem Jaffree; Mailah Akwete Jaffree; Talibah Akwokwo Jaffree, infants, by and through their best of friend and father, Ishmael Jaffree, on behalf of themselves and all other persons similarly situated; Chrystobel Allen; Deborah Darlene Allen; Ronald Lernard Allen; Rebecca Michelle Allen; Clara Preston; Essina M. Preston; Nikklas R. Kidd, Plaintiffs–Appellants,

v.

George C. WALLACE, as Governor of the State of Alabama, etc; John Tyson, Jr.; Isabelle Thomasson; Nolan Williams; Dr. John L. Fulmer; Victor P. Poole; Dr. Harold C. Martin; Dr. James B. Allen, Jr.; and Dr. Evelyn Pratt, as members of the Alabama State Board of Education; Wayne Teague, as Superintendent of Ala. Bd. of Education; Board of School Commissioners of Mobile County; Judy A. McCain, individually and as member of Board of School Commissioners; Charles S. Belk; Howard F. Mathis, III; Norman C. Cox and Dr. Robert Gilliard, Individually and as members of Board of School Commissioners of Mobile County; Dr. Abe Hammons, Individually and as Superintendent of the Mobile County Board of Education, and Douglas T. Smith, teacher in Public School System of Montgomery County, Alabama, Defendants–Appellees.

No. 87–7359.
Non–Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

Jan. 22, 1988.

---

Ishmael Jaffree, Legal Services Corp. of Alabama, Mobile, Ala., for plaintiffs-appellants.

Jim R. Ippolito, Jr., Office of General Counsel, Alabama Dept. of Educ., Montgomery, Ala., for Alabama State Bd. of Educ. and State Supt. of Educ.

Thomas O. Kotouc, Parker & Kotouc, Thomas F. Parker IV, Montgomery, Ala., for Douglas T. Smith.

Robert C. Campbell, III, Sintz, Campbell, Duke, Taylor, & Cunningham, Mobile, Ala., for Board of School Comm. of Mobile County, et al.

Before HILL, FAY and EDMONDSON, Circuit Judges.

PER CURIAM:

This appeal raises several issues concerning the doctrine of res judicata. Plaintiffs filed and amended their complaint during the pendency of the appeal to this court in *Smith v. Board of School Comm'rs of Mobile County*, 827 F.2d 684 (11th Cir. 1987). The district court (Judge W. Brevard Hand) found that "the issues sought to be litigated in this action are founded upon legal theories which, at the time this action was filed, were pending and due to be litigated in *Jaffree v. Board of School Commissioners of Mobile County*, Civil Action No. 82–554–H, *sub nom. Smith v. Board of School Commissioners of Mobile County*, Civil Action No. 82–554–H, an action originally filed by these plaintiffs." *Jaffree v. Wallace*, No. 86–0515–BH (S.D.

Ala. May 7, 1987). Thus, the court held that plaintiffs were "estopped to file [or amend] a second action raising the same issues which they had the opportunity to litigate but chose to abandon." *Id.* Plaintiffs appeal from the district court's order, asserting that (1) Judge Hand should have recused himself from considering this case, and (2) the doctrine of res judicata does not bar the present action.[1] Because we perceive no error in the district court's findings and conclusions, we affirm the court's dismissal of plaintiffs' action.

### Background

In 1982, pursuant to 42 U.S.C. sec. 1983, Ishmael Jaffree, one of the appellants in this action, sued on behalf of three of his minor children. He sought a declaratory judgment and injunction against the Mobile County School Board, various school officials, teachers, the Governor of Alabama, and the Alabama State Board of Education. Jaffree challenged classroom prayer activities and three Alabama statutes that allegedly violated the establishment and free exercise clauses of the first amendment.[2] Douglas T. Smith, one of the appellees in this action, and others intervened in Jaffree's action, alleging that an injunction against religious activity in the public schools would violate their right to free exercise of religion. We need not recite in detail the full history of that case, which the parties label *"Jaffree I."* See *Jaffree v. Board of School Comm'rs*, 554 F.Supp. 1104, 1128 (S.D.Ala.1983), *aff'd in part, rev'd in part sub nom. Jaffree v. Wallace*, 705 F.2d 1526 (11th Cir.1983), *cert. denied sub nom. Board of School Comm'rs v.*

---

1. In this opinion we use the term "res judicata" to signify "claim preclusion", while "collateral estoppel" signifies "issue preclusion."

   The courts have adopted "varying and, at times, seemingly conflicting terminology ... over the years." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984). Thus, the term "res judicata" may encompass two preclusion concepts: "issue preclusion" and "claim preclusion." Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided.... This effect also is referred

   to as direct or collateral estoppel. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar. *Id.*

2. Jaffree tried to convert the suit into a class action. Yet, in an order dated December 21, 1982, the district court ruled that "there would be no systemic virtue in certifying a class."

*Jaffree,* 466 U.S. 926, 104 S.Ct. 1707, 80 L.Ed.2d 181 (1984); *Jaffree v. James,* 554 F.Supp. 1130, 1132 (S.D.Ala.1983), *aff'd in part, rev'd in part sub nom. Jaffree v. Wallace,* 705 F.2d 1526 (11th Cir.1983), *aff'd,* 472 U.S. 38, 105 S.Ct. 2479, 86 L.Ed. 2d 29 (1985), 466 U.S. 924, 104 S.Ct. 1704, 80 L.Ed.2d 178 (1984).

Upon remand for an assessment of costs and the enforcement of appropriate injunctive relief, the district court *sua sponte* realigned the parties by making Smith party-plaintiff, consolidated the cases, and invited the parties to submit briefs and to reopen the record for the presentation of additional evidence. The district court stated that Jaffree could withdraw if he felt that his position had been "fully justified" —in which case the court would consider the question of attorney's fees—or he could remain in the litigation, in which event his motion for attorney's fees would be denied as premature. Jaffree did withdraw, and Smith filed a position statement which asserted, *inter alia,* that the curriculum in the Mobile County School System unconstitutionally advanced the religion of Humanism and unconstitutionally inhibited Christianity.

Twelve parents of children enrolled in the Mobile County School System intervened as defendants to oppose Smith's request for injunctive and declaratory relief. Judge Hand then held a bench trial in October 1986. He found that the use of forty-four textbooks, which appeared on the Alabama State Approved Textbook List, violated the establishment clause of the first amendment; he permanently enjoined the use of these textbooks in Alabama public schools. On August 26, 1987, we reversed and remanded with directions. *Smith v. Board of School Comm'rs,* 827 F.2d 684 (11th Cir.), *rev'g,* 655 F.Supp. 939 (S.D.Ala.1987).

The present action arose directly from circumstances surrounding *Jaffree I* and *Jaffree sub nom. Smith.* Prior to the October 1986 bench trial in *Jaffree sub nom. Smith,* defendants Governor Wallace and the Mobile County Board of School Commissioners separately agreed to entry of consent decrees in favor of Smith. They stipulated that the textbooks in question "demonstrated censorship of the existence, history, contributions, and roles of Protestantism, Catholicism, and Judasim ... in violation of the First Amendment", and they consented "to the establishment of court-approved standards, criteria, or guidelines designed to protect the constitutional rights stipulated herein."[3]

In May 1986 plaintiffs-appellants Ishmael Jaffree and his wife, a local school teacher, brought this action on behalf of their five minor children. They sought "to enjoin the appellees from entering or executing agreements which would: (a) deny appellants' free speech rights ..., and equal protection rights ... and (b) establish religion in the public school classroom." They also sought a declaration that "secular humanism is not a religion for establishment purposes and that it was not being promoted in the state's public schools."[4]

Although plaintiffs originally filed their action with the Middle District of Alabama, Judge Myron Thompson transferred the case to Judge Hand in the Southern District of Alabama, noting that "[t]he issues [plaintiff Jaffree] raises as a basis for seeking ... relief in this court are substantially similar to the issues now pending before that court." Thereafter, plaintiffs filed a motion to recuse, asserting that Judge Hand (1) exhibited undue partiality concerning the issues and (2) exhibited personal bias against Jaffree. The district court (Judge Hand) denied the motion to disqualify.[5]

---

**3.** The other defendants—the Alabama State Board of Education and the twelve parents-intervenors—never agreed to a consent order, and they actively litigated the textbook/curriculum dispute.

**4.** Jaffree sought, but never obtained, the certification of a class that would include "classes of similarly situated parents, teachers, and students."

**5.** We then refused to grant appellants' request for a writ of mandamus disqualifying Judge Hand.

After filing their motion to recuse, plaintiffs attempted to amend their complaint by naming additional plaintiffs.[6] They also asserted that the State Board of Education had passed a resolution "on or about June 5, 1986, which promotes the religions of Protestantism, Catholicism, and Judaism, denies to the plaintiffs and some members of the classes they seek to represent, the equal protection of the laws in violation of the Fourteenth Amendment."[7] The district court held a hearing on defendants' motions to dismiss.

In May 1987 the district court entered an order dismissing plaintiffs' case. This order came after the district court's decision in *Smith* (March 1987), yet before our decision to reverse on appeal (August 1987). *Smith v. Board of School Comm'rs,* 655 F.Supp. 939 (S.D.Ala.), *rev'd,* 827 F.2d 684 (11th Cir.1987). Upon dismissing the complaint,[8] the district court held that plaintiffs were "estopped to file a second action raising the same issues which they [previously] had the opportunity to litigate but chose to abandon." *Jaffree v. Wallace,* No. 86–0515–BH, at 2 (S.D.Ala. May 7, 1987). This appeal followed.

### Recusal

Appellants claim that Judge Hand improperly refused to recuse himself from this case. Previously we declined to grant appellants' request for a writ of mandamus. Today, we conclude that 28 U.S.C. sec. 455(a) did not indicate a disqualification of Judge Hand.

We review a judge's refusal to recuse himself under the abuse of discretion standard. *United States v. Greenough,* 782 F.2d 1556, 1558 (11th Cir.1986).

The standard "is an objective one, whether a reasonable person knowing all the facts would conclude that the judge's impartiality might reasonably be questioned." *Id.* Furthermore, "[i]t is well established that an allegation of bias sufficient to require disqualification under ... section 455 must demonstrate that the alleged bias is personal as opposed to judicial in nature." *United States v. Meester,* 762 F.2d 867, 884–85 (11th Cir.1985). Thus, appellants must show more than a disagreement with the judge's judicial philosophy: they must point out personal, extrajudicial bias. *Id.*

Appellants have failed to demonstrate how Judge Hand abused his discretion in this case. It is simply not enough to voice disagreement with previous rulings by Judge Hand in this and other cases. Nor is it enough to complain that Judge Hand did not expressly consider some of appellants' motions, including several motions that sought to attack collaterally the pending *Smith* litigation.

### Estoppel of Amended Complaint

Before discussing the doctrine of res judicata in detail below, we must address a preliminary question—namely, whether the district court improperly "estopped" plaintiffs-appellants from amending their complaint. The Jaffrees attempted to amend their complaint to add new parties-plaintiffs *before* defendants had filed a responsive pleading. They claim that they could do this once "as a matter of course" pursuant to Fed. Rule Civ.Proc. 15(a). *See McLellan v. Mississippi Power & Light Co.,* 526 F.2d 870 (5th Cir.1976) (stating when a plaintiff may amend a complaint to add or drop a party "as a matter of

6. Appellants' amended complaint listed as additional plaintiffs Chrystobel Allen and her four minor children, as well as Clara Preston and her two minor children. All of the children allegedly attended public school in Mobile County, Alabama.

7. As amended and enacted June 12, 1986, the board's resolution—entitled "The Roles and Contributions of Religions in the Development and History of the United States"—stated that "historically important facts about the contributions of religions to the development of the

United States may not appear in some history textbooks"; it requested that the State Superintendent of Education and the state textbook committee take appropriate actions. Apparently, as amended the resolution did not mention any particular faith or denomination.

8. Because the district court found that plaintiffs were "estopped to file this second action ..., they [were] also clearly estopped to amend the complaint as to such action." *Jaffree v. Wallace,* No. 86–0515–BH, at 4 (S.D.Ala. May 7, 1987).

course"), *vacated in part on other grounds,* 545 F.2d 919, 922 n. 3 (1977) (*en banc*).[9]

We believe that *McLellan* does not control this case. First, *McLellan* involved the amendment of a complaint to add parties defendants rather than plaintiffs. *See Summit Office Park, Inc. v. United States Steel Corp.,* 639 F.2d 1278, 1283 n. 11 (5th Cir. Unit A 1981) (stressing this fact). Second, unlike the plaintiff in *McLellan,* the Jaffrees sought to amend their complaint to surmount an otherwise fatal res judicata bar.

■ In an analogous case, the United States Court of Appeals for the Fifth Circuit held that, because the original parties-plaintiffs lacked standing, they could not amend their complaint to add new parties-plaintiffs. *Id.* at 1282–85. The court held as follows:

> [W]here a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs, a new class, and a new cause of action.
>
> The principal issue involved is not whether the complaint can be amended as a matter of course, as urged by appellants, but ... whether [plaintiff-] Summit could offer an amendment to the complaint at all. Since there was no plaintiff before the court with a valid cause of action, there was no proper party available to amend the complaint.

*Id.* at 1282. Similarly, assuming that res judicata barred the Jaffrees' original complaint, plaintiffs were estopped from amending their complaint: "No amendment could give [plaintiffs] a cause of action." *Id.*

### Res Judicata

The doctrine of res judicata, or claim preclusion,

refers to the preclusive effect of a judgment in foreclosing relitigation of matters that were litigated or could have been litigated in an earlier suit.... In order for the doctrine of res judicata to bar a subsequent suit, four elements must be present: (1) there must be a final judgment on the merits, (2) the decision must be rendered by a court of competent jurisdiction, (3) the parties, or those in privity with them, must be identical in both suits; and (4) the same cause of action must be involved in both cases.

*I.A. Durbin, Inc. v. Jefferson Nat'l Bank,* 793 F.2d 1541, 1549 (11th Cir.1986).

Appellants argue that at least three elements [10] did not exist in this case. Regarding the first element—a final judgment, appellants quote a treatise for the following proposition:

> When a judgment has been subjected to appellate review, the appellate court's disposition of the judgment generally provides the key to its continued force as res judicata and collateral estoppel. A judgment that has been vacated, reversed, or set aside on appeal is thereby deprived of all conclusive effect, both as res judicata and as collateral estoppel.

1B *Moore's Federal Practice* Para. 0.416[2], at 517 (1984). Appellants cite several cases that differ significantly from the case *sub judice. See, e.g., Quarles v. Sager,* 687 F.2d 344 (11th Cir.1982) (when the district court's judgment is *vacated,* it has no preclusive effect); *Hicks v. Quaker Oats Co.,* 662 F.2d 1158 (5th Cir.1981) (discussing the use of offensive collateral estoppel and the "alternative ground" rule when a losing party fails to appeal a decision).

■ We conclude that finality, for purposes of claim preclusion, existed in this case. Appellants filed and attempted to amend their complaint during the pendency of the *Smith* appeal. Prior to our reversal

---

**9.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (*en banc*), this court adopted as precedent all decisions of the former Fifth Circuit Court of Appeals decided prior to October 1, 1981.

**10.** In their reply brief appellants state that "this Court noted jurisdiction in entertaining the appeal of *Smith*", and "[t]herefore, this factor, for now, will not be pursued." Reply Brief of Appellants, *Jaffree v. Wallace,* at 11–12.

of the district court's judgment in that case, the district court dismissed appellants' action on preclusion/estoppel grounds. "The established rule in the federal courts is that a final judgment retains all of its res judicata consequences pending decision of the appeal." 18 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* sec. 4433, at 308 (1981 & Supp. 1987) [Wright & Miller, *Federal Practice and Procedure* ] (see cases listed therein). Moreover, "[a] judgment merely voidable because based upon an erroneous view of the law is not open to collateral attack, but can be corrected only by a direct review and not by bringing another action upon the same cause [of action]." *Baltimore S.S. Co. v. Phillips*, 274 U.S. 316, 47 S.Ct. 600, 604, 71 L.Ed. 1069 (1927). *See also Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 101 S.Ct. 2424, 2428–31, 69 L.Ed. 2d 103 (1981) (citing *Phillips* ).[11]

Regarding the third element—parties in privity, appellants assert that their complaint listed additional parties-plaintiffs, including Ishmael Jaffree's children and his wife,[12] who were not parties to the *Jaffree sub nom. Smith* litigation. In dismissing appellants' action, the district court stated simply that "it cannot be disputed that ... privity with party plaintiffs exists." *Jaffree*, No. 86–0515–BH, at 2 n. 2.[13] Given the context and posture of this case, it appears that appellants Jaffree were in privity with plaintiffs Ishmael Jaffree and his children in the *Jaffree sub nom. Smith* case.

We begin with a discussion of the doctrine of "virtual representation", which supports a finding of privity "when the respective interests are closely aligned and the party to the prior litigation adequately represented those interests." *Delta Air Lines, Inc. v. McCoy Restaurants, Inc.*, 708 F.2d 582, 587 (11th Cir.1983). Several factors are relevant, including "participation in the first litigation, apparent consent to be bound, apparent tactical maneuvering, [and] close relationships between the parties and nonparties." 18 Wright & Miller, *Federal Practice & Procedure*, sec. 4457, at 494–99. *See also Robinson v. National Cash Register Co.*, 808 F.2d 1119, 1124 (5th Cir.1987) (discussing the doctrine and noting that "[t]he question whether a party's interests are virtually representative of the interests of a nonparty is one of fact for the [district] court."). Although a familial relationship need not, in and of itself, confer privity status, it does constitute an important factor when assessing the preclusive effects of a prior adjudication. *See Mesa Petroleum Co. v. Coniglio*, 787 F.2d 1484, 1489–90 (11th Cir. 1986) (plaintiff-wife was precluded from litigating claims her husband previously had litigated), *cert. denied,* —— U.S. ——, 107 S.Ct. 876, 93 L.Ed.2d 830 (1987); *Cotton v. Federal Land Bank of Columbia*, 676 F.2d 1368, 1369–71 (11th Cir.) (plaintiff-husband was precluded from litigating claims his wife previously had litigated), *cert. denied,* 459 U.S. 1041, 103 S.Ct. 458, 74 L.Ed. 2d 610 (1982); *Seamon v. Bell Tel. Co. of Pa.*, 576 F.Supp. 1458, 1460–61 (W.D.Pa. 1983) (plaintiff-husband was precluded

---

**11.** Appellants also argue that res judicata does not bar their action because they never litigated fully the *Jaffree sub nom.* case; they claim, in effect, that the district court forced them to drop out of the suit when it realigned the parties. Yet, as their complaint admits, appellants had an option and made a choice:

> The Court's order set up the classic conflict between counsel—who was desirous of his fees—and client, who is desirous of having the issue of secular humanism litigated, if at all, in good faith. So that counsel would not have to wait another three years to recover fees, plaintiffs authorized counsel to file a motion to withdraw from further involvement in the case.

**12.** Previously, we concluded that the Jaffrees could not amend their complaint to add parties-plaintiffs, assuming that res judicata barred their action. Thus, in this section we focus on whether Mrs. Jaffree and her children were effectively in privity with Mr. Jaffree and those party to the *Jaffree sub nom. Smith* action. We do not discuss the privity issue as it relates to the Allen and Preston families, who were named in plaintiffs' amended complaint.

**13.** The district court seemingly refused to consider whether privity applied to the parties listed in appellants' *amended* complaint. *See, id.* at 4 (stating simply that plaintiffs were "estopped to amend the complaint.").

from litigating claims his wife previously had litigated), *aff'd*, 740 F.2d 958 (3d Cir. 1984).

■ We cannot say that the district court clearly erred in finding that the Record in this case indicates an identity of interests, and adequacy of representation, sufficient to confer privity status upon all appellants-Jaffree. Ishmael Jaffree chose to withdraw from the *Jaffree sub nom. Smith* litigation [14] *after* the district court had announced its intention to reopen the Record for the presentation of evidence on the schools' curriculum. While his motion for attorney's fees remained pending, twelve parents intervened as defendants to oppose Smith, *et al.*[15] Rather than attempt to intervene when they learned about settlement negotiations, Jaffree, his wife, and children filed this action.[16] Their subsequent motions and filings reveal a close identity of claims and parties.[17] Under the circumstances, appellants have failed to demonstrate how privity was lacking in this case.[18]

■ Our analysis of the fourth and final element of res judicata—same cause of action, confirms our conclusion. Appellants contend that their action constitutes a "claim" or "cause of action" that is separate and distinguishable from the *Jaffree sub nom. Smith* case. They argue that the issues and relief requested differ in each case. We disagree and conclude that the district court properly estopped their action.

Res judicata, or "claim preclusion," "extends not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same 'operative nucleus of fact.'" *Olmstead v. Amoco Oil Co.*, 725 F.2d 627, 632 (11th Cir.1984). *See also I.A. Durbin, Inc.*, 793 F.2d at 1549 ("The principal test for determining whether the causes of action are the same is whether the primary right and duty are the same in each case.");

14. At the time, he represented himself and several of his children. He withdrew to obtain attorney's fees, stating that his position had been "fully satisfied."

15. After the parents filed their motion to intervene, Jaffree mailed a letter to the Mobile County Board of School Commissioners revealing his position and plans:

> A group of *similar-minded parents* have asked the court to permit them to intervene in the case to defend your curriculum. Should the court permit this intervention, you will hear nothing further from me. However, should the Board elect not to defend its own curriculum (via settlement) and the court deny the intervenors' request for intervention, I intend to either ask the court to set aside my motion to withdraw or bring a separate action against the Board.

Letter from Ishmael Jaffree, at 1 (Feb. 14, 1986) (emphasis added).

16. Newspaper articles in the Record indicate that the *Jaffree sub nom. Smith* case had attracted considerable public attention. We assume that Mrs. Jaffree and her children were aware of that litigation, which Mr. Jaffree had initiated, as it developed. *Jaffree sub nom. Smith* involved a dispute about the public school curriculum where they taught or learned.

17. Plaintiffs made statements indicating party/action similarity in several motions: "the plaintiff intervenors [in *Smith*] filed a motion to represent substantially the same class as the plaintiffs in the case *sub judice*." Plaintiffs' Motion to Stay Class Hearing in Related Cases, para. 4, at 2 (filed June 23, 1986); "Many in plaintiff's [proposed] class are similarly situated.... Plaintiffs, therefore, move this court to stay its March 4, 1987 Judgment and Order, insofar as they enjoin defendants from using the textbooks identified in the Court's judgment." Plaintiffs' Motion to Stay Order in Related Case, or, in the Alternative, to Enjoin the Enforcement of Said Order Pending Resolution of this Action, at 2 (filed March 11, 1987).

18. At a hearing dated April 17, 1987, the parties argued about several issues including res judicata. Mr. Jaffree, who represented the plaintiffs, stated that "there is a problem with [the theory of res judicata] because there is not the parties and short of that I'm prepared to go forward as soon as I get my discovery." Later, Mr. Kotouc, who represented appellee Smith, commented as follows:

> [I]n conclusion I note Mr. Jaffree says one reason his case should go forward and one reason our position to dismiss should not be granted is because there is no identity of parties and yet in his argument this morning he indicated that these others that he would like to have served in this litigation were those who knew and were aware of but simply could not afford to serve in order to create an identity of parties, therefore, Mr. Jaffree himself had control over whether the parties would be the same or not and he chose not to serve them....

*cf. Jackson v. United States Postal Service,* 799 F.2d 1018, 1021 (5th Cir.1986) (adopting the "series of connected transactions" test for comparing causes of action). Furthermore, "[i]n determining whether the causes of action are the same, a court must compare the substance of the actions, not their form." *I.A. Durbin, Inc.,* 793 F.2d at 1549.

A comparison of the present action with *Jaffree sub nom. Smith* reveals that the two cases arose from the same "operative nucleus of facts" and that they involved the same "primary right and duty." Appellants' complaint in this case sought to enjoin state and local officials from "executing any agreement between themselves or others which denies plaintiffs their free speech rights ... and/or establishes religion in the public schools." To achieve this end, they sued persons and entities that were parties to the *Jaffree sub nom. Smith* case.[19] *Both* cases raised first amendment (free exercise and establishment clause) challenges to the use of textbooks and teachings on various subjects.

 Appellants further contend that the focus of their action—namely, the consent orders and the board of education's resolution—concerns events that occurred after they dropped out of the *Jaffree sub nom. Smith* case. Yet these events arose directly from the same "operative nucleus of facts", involving the same "primary right and duty." The doctrine of res judicata bars all subsequent suits raising allegedly new theories, unless a substantial change in the underlying facts or law has transpired. *See* 1B *Moore's Federal Practice* para. 0.415, at 504–12 (stating the rule and listing cases); *Jackson v. DeSoto Parish*

*School Bd.,* 585 F.2d 726, 729 (5th Cir.1978) ("res judicata is no defense where, between the first and second suits, there has been an intervening change in the law or modification of significant facts creating new legal conditions."); *cf. Montana v. United States,* 440 U.S. 147, 99 S.Ct. 970, 978, 59 L.Ed.2d 210 (1979) (discussing the "different demand" exception to collateral estoppel).

We conclude that the doctrine of res judicata, or claim preclusion, bars appellants' action. Accordingly, the district court is AFFIRMED.

---

19. In effect, appellants sought to attack collaterally the ongoing proceedings in the *Smith* case: their complaint (1) denounced so-called "collusion" that allegedly was occurring in the *Smith* case; (2) criticized the manner in which defendants opposed Smith; (3) argued that the Governor's consent order "has given the [district court], and ostensibly the intervenors, carte blanche discretion to adopt standards ... which, [are] designed to insure that Protestantism, Catholicism and Judaism be given equal time in the state's text books". They requested declaratory and injunctive relief that would end the alleged "collusion" and eliminate "guidelines ... promoting ... religion in the public schools."

Appellants filed several motions that further demonstrated the inextricable linkage between this action and *Jaffree sub nom. Smith:* they filed (1) a "Motion to Consolidate" with the *Smith* actions, asserting "common questions of law and fact"; (2) a "Motion to Stay Hearing in Related [*Smith*] Cases"; and (3) a "Motion to Stay Order in Related [*Smith*] Case, or, in the Alternative, to Enjoin the Enforcement of Said Order Pending Resolution of this Action."