35 F.3d 1466
 63 USLW 2215
 FRANKLIN SAVINGS ASSOCIATION, formerly a Kansas Savings and
Loan Association; Franklin Savings Corporation, a
Kansas corporation, Plaintiffs-Appellants,
v.
OFFICE OF THRIFT SUPERVISION, Director, Department of the
Treasury, Defendant-Appellee.
 No. 93-3180.
 United States Court of Appeals,
Tenth Circuit.
 Sept. 16, 1994.
 
 Mark S. Gunnison (R. Pete Smith, Jonathan A. Margolies and Katharina E. Beal of McDowell, Rice & Smith, Kansas City, MO, with him on the briefs) of McDowell, Rice & Smith, Overland Park, KS, for plaintiffs-appellants.
 Aaron B. Kahn, Asst. Chief Counsel (Carolyn B. Lieberman, Acting Chief Counsel, and Thomas J. Segal, Deputy Chief Counsel, with him on the brief), Office of Thrift Supervision, Washington, DC, for defendant-appellee.
 Before BRORBY, SETH and EBEL, Circuit Judges.
 BRORBY, Circuit Judge.
 
 
 1
 Franklin Savings and Loan Association (the Association) appeals the decision of the district court that held the Association was not entitled to judicial review of a decision of the Director of the Office of Thrift Supervision (the Director). The Director replaced the conservator, who was to operate the Association, with a receiver, who will liquidate the Association. We hold judicial review of the replacement decision is not permitted. We furthermore hold Franklin Savings Corporation (the Holding Company), a holding company that owns more than ninety percent of the Association's stock, does not have standing.
 
 
 2
 The Director, in 1990, determined the Association was "in an unsafe and unsound condition to transact business" and appointed the Resolution Trust Corporation as a conservator of the Association.[1] Both the Association and its Holding Company commenced an action pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA or the Act) to remove the conservator. The district court agreed, and we reversed holding the proper scope of judicial review of the Director's appointment decision is limited to the administrative record and finding the Director's decision to appoint a conservator supported by the record. Franklin Sav. Ass'n v. Office of Thrift Supervision, 742 F.Supp. 1089 (D.Kan.1990), rev'd, 934 F.2d 1127 (10th Cir.1991) ("Franklin I "). After the case was dismissed, the Director of the Office of Thrift Supervision decided to change the role of the Resolution Trust Corporation from conservator to receiver. 57 Fed.Reg. 41,969 (Sept. 14, 1992). The Association and the Holding Company initiated this suit to challenge the replacement. The district court sustained the Director's motion to dismiss holding the Director's decision to impose a receivership in the case at bar is not subject to judicial review. Franklin Sav. Ass'n v. Office of Thrift Supervision, 821 F.Supp. 1414 (D.Kan.1993) ("Franklin II ").
 
 The Holding Company's Standing to Sue
 
 3
 A threshold question in this case is whether the Holding Company has standing to bring this suit pursuant to 12 U.S.C.A. Sec. 1464(d)(2)(B) (Supp.1994).[2] The district court determined the Holding Company lacked standing because the statute provides only "the association" may bring an action under FIRREA challenging the appointment of a receiver or conservator. 12 U.S.C.A. Sec. 1464(d)(2)(B). The Holding Company is not the association; it is merely a stockholder. The district court relying upon the clear statutory language reasoned that the Holding Company lacked standing. We agree.
 
 
 4
 Appellants assert the question of the Holding Company's standing has been raised and fully litigated in an earlier suit between the parties and claim res judicata and collateral estoppel relieve this court from considering standing. The issue of standing was argued before the district court during the summary judgment phase of the first Franklin case. Franklin Sav. Ass'n v. Office of Thrift Supervision, 740 F.Supp. 1531, 1533-34 (D.Kan.1990). The district court found the Holding Company had the capacity to be a party plaintiff on its own behalf. Standing was not raised during the appeal of the district court's decision on the merits. Franklin I, 934 F.2d at 1135 n. 2 (Tenth Circuit panel noted the issue of standing had not been raised). This court vacated the district court's determination in the entirety, however, and ordered the case dismissed. See id. at 1151. We noted the issue of standing need not be addressed because we reversed on other grounds. Id. at 1135 n. 2.
 
 
 5
 " 'A judgment that has been vacated, reversed, or set aside on appeal is thereby deprived of all conclusive effect, both as res judicata and as collateral estoppel.' " Jaffree v. Wallace, 837 F.2d 1461, 1466 (11th Cir.1988) (quoting 1B Moore's Federal Practice p 0.416, at 517 (1984)). Because we entirely vacated the district court's decision and remanded the case to be dismissed, the summary judgment determination on standing lacks preclusive effect. Martinez v. Winner, 800 F.2d 230, 231 (10th Cir.1986) (the court of appeals's order to vacate and dismiss will remove the res judicata and the stare decisis effect of the vacated judgments); cf. Johnson v. Chicago Board of Educ., 457 U.S. 52, 53-54, 102 S.Ct. 2223, 2224, 72 L.Ed.2d 668 (1982) ("Because we have vacated the Court of Appeals' judgments in this case, the doctrine of the law of the case does not constrain either the District Court or, should an appeal subsequently be taken, the Court of Appeals."). Because the earlier determination has been vacated, res judicata is not a concern.
 
 
 6
 The United States, as sovereign, is immune from suits unless it consents to be sued. United States v. Mitchell, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980); see Transohio Sav. Bank v. Office of Thrift Supervision, 967 F.2d 598, 606 (D.C.Cir.1992). The terms of the United State's consent to be sued defines the court's jurisdiction to hear the case. Mitchell, 445 U.S. at 538, 100 S.Ct. at 1351. Through Sec. 1464(d)(2)(B)[3] the United States has waived its sovereign immunity and consented to be sued by the association. This waiver of sovereign immunity is limited and explicit; only the association is authorized by Congress to seek judicial review of the Director's appointment of the receiver. See United Liberty Life Ins. Co. v. Ryan, 985 F.2d 1320, 1328 (6th Cir.1993); Marietta Franklin Sec. Co. v. Muldoon, 972 F.2d 128, 129 (6th Cir.1992). Congress has not authorized stockholders of a savings and loan association to sue under this portion of FIRREA, only the association.
 
 
 7
 The Holding Company lacks standing to sue the Director under Sec. 1464(d)(2)(B) of FIRREA.[4]
 
 JUDICIAL REVIEW
 
 8
 The district court determined the replacement of a conservator by a receiver, as in the Association's situation, is not reviewable by the courts. The court found the statute was unambiguous and the plain meaning of the statute only could be read one way: FIRREA prohibits judicial review of the Director's decision to replace the conservator with a receiver. Franklin II, 821 F.Supp. at 1419. Under this interpretation, the Association's current action would be barred by the statute. We agree.
 
 
 9
 The statute outlines procedural review by the courts. The statute reads:
 
 
 10
 (2) Conservatorships and receiverships
 
 
 11
 ....
 
 
 12
 (B) Power of appointment; judicial review
 
 
 13
 The Director shall have exclusive power and jurisdiction to appoint a conservator or receiver for a Federal savings association. If, in the opinion of the Director, a ground for the appointment of a conservator or receiver for a savings association exists, the Director is authorized to appoint ex parte and without notice a conservator or receiver for the savings association. In the event of such appointment, the association may, within 30 days thereafter, bring an action in the United States district court ... for an order requiring the Director to remove such conservator or receiver, and the court shall upon the merits dismiss such action or direct the Director to remove such conservator or receiver....
 
 
 14
 (C) Replacement
 
 
 15
 The Director may, without any prior notice, hearing, or other action, replace a conservator with another conservator or with a receiver, but such replacement shall not affect any right which the association may have to obtain judicial review of the original appointment, except that any removal under this subparagraph shall be removal of the conservator or receiver in office at the time of such removal.
 
 
 16
 (D) Court action
 
 
 17
 Except as otherwise provided in this subsection, no court may take any action for or toward the removal of any conservator or receiver or, except at the request of the Director, to restrain or affect the exercise of powers or functions of a conservator or receiver.
 
 
 18
 12 U.S.C.A. Sec. 1464(d)(2) (Supp.1994) (emphasis added).
 
 
 19
 In interpreting FIRREA, we begin with the plain language of FIRREA. Our inquiry is complete if the words of the statute are unambiguous. See Connecticut Nat'l Bank v. Germain, --- U.S. ----, ----, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992). We also must read the provisions of the Act together to understand the meaning of the judicial restriction in the statute. The meaning of the statutory language, plain or not, depends on context. King v. St. Vincent's Hosp., 502 U.S. 215, ----, 112 S.Ct. 570, 574, 116 L.Ed.2d 578 (1991); Homeland Stores, Inc. v. Resolution Trust Corp., 17 F.3d 1269, 1273 (10th Cir.1994), petition for cert. filed, 63 USLW 3067 (U.S. Jul. 25, 1994) (No. 94-149).
 
 
 20
 The statute provides for judicial review of an "appointment" of a conservator or a receiver. 12 U.S.C.A. Sec. 1464(d)(2)(B) (Supp.1994). The statute also allows for a "replacement" of the conservator with a receiver. 12 U.S.C.A. Sec. 1464(d)(2)(C) (Supp.1994). However, there is no indication from this section of FIRREA that the court may review the "replacement." Section 1464(d)(2)(C) provides "replacement shall not affect any right which the association may have to obtain judicial review of the original appointment." Id. (emphasis added). Hence, judicial review under Sec. 1464(d)(2)(B) is limited to the Director's initial decision to appoint a conservator or receiver.
 
 
 21
 This interpretation is reinforced by the scope of the anti-injunction provision of Sec. 1464(d)(2)(D). Section 1464(d)(2)(D) states "no court may take any action for or toward the removal of any conservator or receiver or ... to restrain or affect the exercise of powers or functions of a conservator or receiver" unless so provided by the statute or requested by the Director. To allow judicial review of decisions past the initial appointment would make subsections 1464(d)(2)(C) and (D) ineffective. Such a reading must be rejected. See United States Dep't of Treasury v. Fabe, --- U.S. ----, ---- n. 6, 113 S.Ct. 2202, 2210 n. 6, 124 L.Ed.2d 449 (1993).
 
 
 22
 Our interpretation of Sec. 1464 is consistent with the broad policy objectives of FIRREA to strengthen the enforcement powers of federal regulators and to deal expeditiously with failed depository institutions. FIRREA, Pub.L. No. 101-73, Sec. 101(8)-(9), 103 Stat. 187 (1989). Limiting judicial review to the initial appointment of a conservator or receiver is also consistent with the strict reading other courts of appeals have given the precursors to subsections (B) through (D) of Sec. 1464(d)(2). See First Fed. Sav. Bank & Trust v. Ryan, 927 F.2d 1345, 1355-57 (6th Cir.) (declining to allow a action seeking to enjoin an appointment of conservator or receiver prior to Director's decision), cert. denied, --- U.S. ----, 112 S.Ct. 187, 116 L.Ed.2d 148 (1991); Haralson v. Federal Home Loan Bank Bd., 837 F.2d 1123, 1125-26 (D.C.Cir.1988) (rejecting an association's attempt to enjoin an appointed conservator from selling major assets because injunction did not challenge the grounds for appointment).[5] The Association is not entitled to judicial review of the replacement of a conservator with a receiver having once obtained review of the initial appointment.
 
 DUE PROCESS
 
 23
 The Association argues if no additional hearing is granted to review the replacement decision, we must find FIRREA unconstitutional, in violation of the Fifth Amendment due process clause. The Association reasons the decision to replace the conservator with a receiver entails a permanent, rather than temporary, deprivation of property. Therefore, argues the Association, it deserves a separate opportunity to be heard. We disagree.
 
 
 24
 The Due Process Clause protects against the improper deprivation of a significant property interest. See Fuentes v. Shevin, 407 U.S. 67, 82, 92 S.Ct. 1983, 1995, 32 L.Ed.2d 556 (1972). "[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." Cafeteria & Restaurant Workers Union v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748-49, 6 L.Ed.2d 1230 (1961); See Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). Therefore, we must determine what interests are affected, what due process requires, and whether FIRREA meets these requirements.
 
 
 25
 Specifically, the Association argues the Director's decision to impose a receiver is a new deprivation of a tangible property interest. A receiver has some statutory powers in addition to those powers held by a conservator. Compare 12 U.S.C.A. Sec. 1821(d)(2)(E) (Supp.1994) (receiver may place the depository institution in liquidation and proceed to sell the assets of the institution) with 12 U.S.C.A. Sec. 1821(d)(2)(D) (1989) (conservator may take action to put the depository institution in a sound and solvent condition and preserve the assets and property of the institution).
 
 
 26
 However, once the Office of Thrift Supervision has initially determined to place an institution into conservatorship, we do not believe the decision to replace a conservator with a receiver works an additional property loss. Once a conservator is appointed, the conservator gains "all the powers of the members, the stockholders, the directors, and the officers of the association and shall be authorized to operate the association in its own name or to conserve its assets." 12 U.S.C.A. Sec. 1464(d)(2)(E)(i) (Supp.1994). Because the Association and its stockholders do not retain authority to control specific assets after the conservator takes control of the savings and loan, a later decision to employ a receiver does not deprive the owners or operators of more property. Indeed, with the liquidation of the Association, the owners may receive what value remains in their shares after creditors and administrative expenses are paid. 12 U.S.C.A. Sec. 1821(d)(11)(A)(v) (Supp.1994) (shareholder preference).
 
 
 27
 The Director was free to initially appoint either a conservator or a receiver. In fact, the same criteria are required to appoint either one. 12 U.S.C.A. Sec. 1464(d)(2)(A). Also, at the time of the initial appointment, the statute made it clear for the Association the Director was free to replace the conservator with a receiver without judicial review.[6]
 
 
 28
 The Association has already received all of the process due at this phase. The Association has used its opportunity to challenge the Director's decision to appoint a conservator. The courts reviewed the grounds for the appointment, and the same grounds are required for the initial appointment of a receiver. 12 U.S.C.A. Sec. 1464(d)(2)(A). Due process is satisfied by the arbitrary and capricious standard of review of the agency's initial determination that grounds exist to appoint either a conservator or receiver. In the context of banking regulation, post-deprivation court review generally satisfies due process requirements. Franklin I, 934 F.2d at 1140; Haralson, 837 F.2d at 1126; Woods v. Federal Home Loan Bank Bd., 826 F.2d 1400, 1410-13 (5th Cir.1987), cert. denied, 485 U.S. 959, 108 S.Ct. 1221, 99 L.Ed.2d 422 (1988); see Fahey v. Mallonee, 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947) (no constitutional requirement an association be given an adjudicatory hearing prior to the Federal Home Loan Bank Board's appointment of a conservator). The Association has been furnished adequate procedure.
 
 
 29
 We are satisfied with the limited procedure available to associations in the appointment and replacement of conservators and receivers. Our comfort in upholding FIRREA's denial of judicial review of the replacement comes from the possible availability of redress if the Resolution Trust Corporation mismanages a liquidation or improperly liquidates a savings and loan. See Abbott Bldg. Corp. v. United States, 951 F.2d 191, 195 (9th Cir.1991) (courts have authority to hear a suit alleging governmental banking agency as receiver violated state law). The Administrative Procedure Act protects from agency action that is arbitrary and capricious or in bad faith. 5 U.S.C.A. Secs. 500-706. The Federal Tort Claims Act waives sovereign immunity to hold the government liable for tortious, nondiscretionary actions. 28 U.S.C.A. Secs. 2671-80. The Tucker Act accommodates nontort claims under $10,000. 28 U.S.C.A. Secs. 1346 & 1491.
 
 
 30
 The anti-injunction sections of FIRREA do not seem to block an association from challenging governmental action after-the-fact and seeking compensation for wrongs committed.[7] However, the application of the Administrative Procedure Act, the Federal Torts Claim Act, or the Tucker Act is not presented for our review here.[8] This case does not touch on the situation where the Resolution Trust Corporation mismanages a liquidation or improperly liquidates a savings and loan. We are prohibited from granting the Association an advisory opinion. U.S. Constitution Art. III, Sec. 2, cl. 1. The event presented for review by this court is simply the decision to replace a conservator with a receiver. The replacement decision has not manifested a loss. Without a showing of loss, we narrowly hold the Association has not been denied property without the due process of law by the decision to replace a properly appointed conservator with a receiver.
 
 CONCLUSION
 
 31
 The Act does not grant federal courts the jurisdiction to evaluate the Director's decision to replace a conservator with a receiver if the initial appointment received review. Although we are concerned the lack of judicial review could be used to conceal federal mismanagement, application of FIRREA to the Director's decision does not violate the Association's Fifth Amendment right to due process. Accordingly, we AFFIRM the district court's opinion.
 
 
 
 [1]
 For a full account of the factual background, see Franklin Sav. Ass'n v. Office of Thrift Supervision, 742 F.Supp. 1089 (D.Kan.1990), and Franklin Sav. Ass'n v. Office of Thrift Supervision, 934 F.2d 1127 (10th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1991)
 
 
 [2]
 Congress has reconfigured FIRREA. See the Federal Deposit Insurance Corporation Improvement Act of 1991, Pub.L. No. 102-242, 105 Stat. 2236 (1991). Although the language has remained consistent, the section numbers have changed. We will refer to the statute as it now exists
 
 
 [3]
 "[T]he association may ... bring an action in the United States district court ... for an order requiring the Director to remove such conservator or receiver." 12 U.S.C.A. Sec. 1464(d)(2)(B) (emphasis added)
 
 
 [4]
 Appellants also argue the Holding Company could have intervened as of right and thus has standing to participate in the lawsuit as a party. We need not address this argument as we are affirming the dismissal of the suit and the Holding Company has not applied to intervene
 
 
 [5]
 In opposition, the Association cites an unpublished district court opinion, Gibraltar Sav. v. Ryan, No. 89-3207-0G, 1990 WL 484155 (D.D.C. July 10, 1990). In Gibraltar, the Director first appointed a conservator, then replaced the conservator with a receiver. The association sought, for the first time, to challenge the grounds for the appointment after the Director made the replacement. The district court found ambiguity in the language of Sec. 1464(d)(2)(B) and (C) and concluded nothing in the statute precluded judicial review of a replacement under Sec. 1464(d)(2)(C). Id. 1990 WL at * 2, * 5
 We are not persuaded by that district court's analysis. There is no ambiguity in the language of the statute. The Gibraltar court need not have concluded subsection (C) allowed for subsequent judicial review of the replacement decision because the court viewed the replacement as an appointment and therefore reviewable under subsection (B). The initial appointment in Gibraltar occurred just before Congress gave the Director the authority to appoint conservators and receivers. As soon as the Director received the new power, it appointed a receiver to liquidate Gibraltar Savings. Gibraltar had not challenged the initial appointment of the conservator.
 We do not face the same situation here. Franklin Savings Association has received judicial review of the original appointment under subsection (B). Subsection (C) gives no further review.
 
 
 [6]
 In the dicta of Franklin I, this court made a distinction between managing the assets and liquidating the assets. 934 F.2d at 1141 ("We believe it significant to note the case before us does not involve the more severe decision to appoint a conservator for the purpose of liquidation.... The decision to appoint a conservator is not a judgment to divest the owner of his property.") However, the dicta does not affect the outcome of this case. The statutory language clearly limits judicial review and we are not convinced the appointment of a receiver under FIRREA violates due process
 
 
 [7]
 Section 1464(d)(2)(D) of FIRREA, on Court Action, prohibits courts from interfering with conservators and receivers. This section and comparable sections have consistently been read as anti-injunction provisions. These sections block parties from seeking temporary restraining orders, injunctions, and declaratory judgments against the banking agencies. See Carney v. Resolution Trust Corp., 19 F.3d 950 (5th Cir.1994); In re Landmark Land Co., 973 F.2d 283 (4th Cir.1992). However, post-action suits do not affect or restrain the exercise of powers or functions of the agency actors. See Abbott, 951 F.2d 191
 
 
 [8]
 Case law indicates there is no review of discretionary decisions to appoint a replacement or to begin liquidation, but these cases leave open the question of whether the operational duties of the Resolution Trust Corporation as receiver is reviewable by the courts. See United States v. Gaubert, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991) (management of banking affairs is a discretionary function grounded in policy and therefore within an exemption from the Federal Tort Claims Act); Berkovitz v. United States, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988) (agency employees who failed to follow agency regulations were not exempt under FIRREA and therefore subject to liability)