**FIRST AMERICAN FEDERAL BANK, Plaintiff,**

v.

**T. Timothy RYAN, Director, Office of Thrift Supervision, Defendant.**

**No. CIV 91–456 TUC JMR.**

United States District Court, D. Arizona.

May 27, 1992.

Richard Parrish, Parrish & Vingelli, Thomas Chandler, Chandler, Tullar, Udall & Redhair, Tucson, Ariz., for plaintiff.

Harris Weinstein, Chief Counsel, Thomas J. Segal, Deputy Chief Counsel, Steve W. Dimmick, Asst. Chief Counsel, Martin Jefferson Davis, Sr. Trial Atty., Richard H. Harvey, Jr., Trial Atty., Office of Chief Counsel, Office of Thrift Supervision, Washington, D.C., for defendant.

## OPINION & ORDER

ROLL, District Judge.

The Director of the Office of Thrift Supervision (Director) seeks summary judgment in this action arising from a complaint filed by First American Federal Bank (First American) challenging the Director's appointment of a receiver for First American.

Following oral argument and a separate evidentiary hearing, the Court has under advisement the Defendant's Motion for Summary Judgment. The Court has considered the legal arguments presented in the parties' several briefs and has also considered the evidence presented at the hearing.

### Scope and Standard of Review

■ The Court's deliberations are guided by the Tenth Circuit's opinion in *Franklin Sav. Ass'n v. Director, Office of Thrift Supervision,* 934 F.2d 1127 (10th Cir.1991), *cert. denied* —— U.S. ——, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992). Pursuant to *Franklin,* under 12 U.S.C. § 1464(d)(2)(D), review of the appointment of a receiver by the Director is governed by the Administra-

tive Procedure Act (APA). 934 F.2d at 1141. The *scope of review* is limited, pursuant to the APA, to the administrative record relied on by the Director in making his decision:

> The focus of the judicial review is to determine whether there exists sufficient evidence in the administrative record to form a reasoned opinion that the statutory grounds for the appointment of a conservator exist.

934 F.2d at 1140. The *standard of review* of the Director's decision, pursuant to the APA, is "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* at 1142 (quoting 5 U.S.C. § 706(2)). To uphold the decision of the Director to appoint a receiver all that is necessary is that this Court find substantial evidence for any *one* of the statutory grounds for the Director's appointment of a receiver. *Franklin* at 1142.

Although the scope and standard of review in this case are narrow, the instant motion is nevertheless still one for summary judgment pursuant to Federal Rule of Civil Procedure 56. In determining whether to grant summary judgment in favor of the Director, this Court must consider the evidence in the light most favorable to First American. *See, e.g., United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

To assist the Court's determination regarding the existence of disputed material facts, evidence was taken by oral testimony pursuant to the Court's discretion under Federal Rule of Civil Procedure 43(e). The poorly indexed record to be reviewed in this matter exceeds 1900 pages. This Court set the hearing to assist it in culling from the record evidence relating to the single issue of the management's and board's alleged incompetence to run the Bank. *See Argus, Inc. v. Eastman Kodak Co.,* 801 F.2d 38, 42 n. 2 (2d Cir.1986), *cert. denied,* 479 U.S. 1088, 107 S.Ct. 1295, 94 L.Ed.2d 151 (1987).

### The Director's Grounds for Appointment

A regular examination by the Office of Thrift Supervision (OTS) of First American commenced on April 8, 1991, and concluded

on June 28, 1991. *See* Administrative Record (A.R.) 80. The examiners reviewed the credit risk presented by the loan portfolio, conducted an assessment of the effectiveness of First American's directors and management, reviewed asset quality, determined First American's capital level and adequacy, analyzed the operating results over the review period, and assessed First American's compliance with the Financial Institutions Reform, Recovery, and Enforcement Act of 1989. First American was found wanting and responded to the exam report, criticizing it.

Based on the exam report and with First American's response before him, on August 16, 1991, by the authority granted him in 12 U.S.C.A. § 1464(d)(2)(E), the Director appointed the Resolution Trust Corp. receiver for First American because, in the Director's opinion, three statutory grounds for appointment of a receiver existed:

(a) [First American] was in an unsafe and unsound condition to transact business due to having substantially insufficient capital or otherwise in that [First American] [1] has negative tangible, core, and risk-based capital and also [2] due to having management and a board of directors that are unable to operate [First American] competently [*see* 12 U.S.C. § 1464(d)(2)(A)(iii) ];

(b) [First American] has incurred or is likely to incur losses that will deplete all or substantially all of its capital, and there is no reasonable prospect for replenishment of [First American]'s capital without federal assistance [*see* 12 U.S.C. § 1464(d)(2)(A)(vii) ]; and

(c) there is a violation or violations of laws or regulations, or unsafe or unsound practice or condition which is likely to weaken the condition of [First American] or otherwise seriously prejudice the interests of depositors [*see* 12 U.S.C. § 1464(d)(2)(A)(viii) ].

A.R. 3–4 (filed Nov. 15, 1991).

### Evidence Regarding Management's Competence

With regard to the Director's finding (a)[2], First American vehemently disagrees with the conclusion that the board of directors and management were incompetent.

In November 1990, Delwin Fassett, assistant regional director of the OTS, told a board meeting that he was "comfortable" with First American's management. R.T. at 171.[1] The previous assistant, John Behrens, had informed Fassett that the bank was "well managed." R.T. at 172. Fassett concurred with that opinion until May 2, 1991, when, for the first time, Mr. Fassett became concerned about the competence of the management and the board based on "some really stark, very alarming numbers...." R.T. at 172–73.

First American was a locally owned and operated former thrift institution heavily invested in local real estate. The OTS stated in its supervisory memorandum recommending appointment of a receiver for First American:

First American's failure to comply with the minimum capital requirements has resulted from severe asset quality problems that steadily deteriorated in the past few years. *Asset quality problems have resulted, in part, from the dramatic decline in the Arizona real estate market, which has taken place in the past few years.*

A.R. at 60 (emphasis added). At the evidentiary hearing, David DeConcini, who operates the real estate portfolio for 4–D Properties and who was also a member of First American's board of directors, testified that First American's difficulties arose because of the deterioration in the real estate market in Tucson. R.T. at 95. This expert also testified that, by 1991, First American was recovering from the effects of the tumultuous market. *Id.*

The most competent management may have difficulty anticipating and responding to changes in the asset quality of its loan portfolio if those changes occur in part due to the vagaries of a deteriorating market. Even the OTS was apparently misled by

---

1. R.T. refers to reporter's transcript of April 10, 1992, evidentiary hearing.

the erratic real estate market. The OTS determined the value of the "Naranja–La-Cholla" property to be $10,000 an acre in its 1991 examination. R.T. at 126. By the time of the hearing less than a year later, the property value had declined to $5800 an acre. *Id.*

The OTS was apparently satisfied with First American's management and board until the mid–1991 exam. This may be inferred from the fact that in September 1990, the Director instructed First American to make a public offering of $3 million in securities. R.T. at 60–61. Before First American could complete the arrangements to sell its securities to the public, however, the OTS seized the Bank.

Finally, it is significant that one of the Director's specific criteria for approval of First American's 1991 amended capital plan, a plan demanded by the OTS if First American wished to avoid being placed into receivership, was that "President Ted Kinart and CEO/COB Sid Felker be replaced,...." A.R. at 193. This amended capital plan requirement, which required the removal of only *two* members of the board and management, tends to undermine the later finding (a)[2] of the Director of the OTS that First American's *entire* board of directors and management were unable to operate the Bank competently.

### *Conclusion*

█ Based upon the previously referred to evidence, a genuine issue of material fact exists so as to preclude summary judgment on the Director's finding (a)[2].

Nevertheless, with regard to grounds (a)[1], (b), and (c), the Director's decision is supported by the so-called "S–Memo", A.R. 56–65, which is itself amply supported by the Report of Examination, A.R. 76–152. Accordingly, the record contains substantial evidence to support the Director's decision that there existed statutory grounds for appointment of a receiver. Further, First American fails to show how the Director's decisions, based on the evidence before him, were arbitrary or capricious.

IT IS ORDERED that the Motion for Summary Judgment is GRANTED in favor of the OTS as to grounds (a)[1], (b), and (c). Summary judgment is DENIED as to ground (a)[2]. JUDGMENT shall be entered for the DEFENDANT.