**FRANKLIN SAVINGS ASSOCIATION, a Kansas Savings and Loan Association, and Franklin Savings Corporation, a Kansas Corporation, Plaintiffs,**

v.

**OFFICE OF THRIFT SUPERVISION, Director Department of the Treasury, Defendant.**

Nos. 92–4196–SAC, 93–4039–SAC.

United States District Court, D. Kansas.

April 14, 1993.

Mark S. Gunnison, McDowell, Rice & Smith, P.C., Overland Park, KS, R. Pete Smith, Jonathan A. Margolies, McDowell, Rice & Smith, P.C., Kansas City, MO, for plaintiffs.

Thomas J. Segal, Harris Weinstein, Aaron B. Kahn, J. Amanda Machen, Laurie Romanowich, Kerry W. Kircher, Office of Thrift Supervision, Washington, DC, Joann E. Corpstein, Office of Thrift Supervision, Shawnee Mission, KS, for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on the defendant's motion to dismiss (Dk. 12) pursuant to Rule 12 of the Federal Rules of Civil Procedure. By order filed February 17, 1993, the court withdrew reference of the adversary action pending in bankruptcy court filed by the plaintiff and consolidated it with the identical district court case filed by the plaintiff. The defendant filed its motion to dismiss in the district court case before the consolidation. For judicial economy and the parties' convenience, the court considers the motion to dismiss to be pending in both cases.

Franklin Savings Corporation ("FSC") is a Kansas corporation and the record holder of more than ninety percent of the stock in Franklin Savings ("FSA").[1] FSA is a state chartered savings and loan association. Besides its offices in Ottawa, Kansas, FSA has eight branch facilities located in eastern Kansas. The Office of Thrift Supervision ("OTS"), created by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"),[2] is primarily responsible through its Director for regulating the federally insured savings and loan associations.

In response to the mounting crisis in the nation's banking and savings and loan industries, Congress enacted FIRREA. In 1989, Congress' perception was that "[t]he nation's

1. For purposes of legal argument, the court will refer to the plaintiffs together as "Franklin."

2. Pub.L. No. 101–73, 103 Stat. 183–553 (1989) (codified at 12 U.S.C. § 1461 *et seq.*)

thrift industry and its insurance fund, the [Federal Savings and Loan Insurance Corporation ("FSLIC")] are currently in precarious financial condition and consumer confidence in the savings and loan industry is waning." H.R.Rep. No. 54, 101st Cong., 1st Sess., pt. 1, at 302 (1989), *reprinted in* 1989 U.S.C.C.A.N. 86, 98. Among the purposes of FIRREA, Congress intended it to increase regulatory supervision over the thrift industry and to establish agencies and procedures for addressing failing thrifts and for disposing of the assets of failed thrifts. H.R.Rep. No. 54 at 307–08, *reprinted in* 1989 U.S.C.C.A.N. at 103–04. FIRREA abolishes the Federal Home Loan Bank Board ("FHLBB") and the FSLIC and assigns their functions to the newly created OTS and the Federal Deposit Insurance Corporation ("FDIC"). FIRREA confers substantial regulatory authority on the Director of the OTS. The Director may appoint a conservator or receiver *ex parte* for a federally insured savings association when there exists one or more of the statutory indicia of a savings association in financial trouble. 12 U.S.C. § 1464(d)(2)(E). The Director also may replace a conservator without any notice, hearing or other action. 12 U.S.C. § 1464(d)(2)(F). This case turns on the Director's exercise of that power to replace a conservator.

## HISTORY

This case comes to this court with some procedural history. In February of 1990, the Director appointed the Resolution Trust Corporation ("RTC") as conservator for FSA. The Director's appointment order set forth these findings as the grounds for the appointment:

> [T]he Association is in an unsafe and unsound condition to transact business in that, among other things, the Association has a significant level of high risk assets, and has placed undue reliance on brokered deposits, (b) the Association has incurred and is likely to incur losses that will deplete all or substantially all of its capital, and there is no reasonable prospect for the Association's capital to be replenished without Federal assistance, and (c) there is a violation or violations of laws or regula-

tions, or an unsafe or unsound practice or condition which is likely to cause insolvency or substantial dissipation of assets or earnings, or is likely to weaken the condition of the Association or otherwise seriously prejudice the interests of its depositors. . . .

(Dk. 1, Complaint, Ex. 2F). The director appointed "not for the purpose of liquidation" the RTC as conservator for Franklin. *Id.*

In March of 1990, Franklin filed an action pursuant to 12 U.S.C. § 1464(d)(2)(E) seeking the removal of the conservator. After a lengthy bench trial, the district court concluded that the director's stated grounds for appointment of the conservator were without a factual basis and that the director acted arbitrarily and capriciously in appointing the conservator. *Franklin Sav. v. Office of Thrift Supervision,* 742 F.Supp. 1089, 1126 (D.Kan.1990). On appeal, the Tenth Circuit reversed and vacated the district court's decision and remanded the case with instructions to dismiss the action. *Franklin Sav. v. Director, Office of Thrift Super.,* 934 F.2d 1127, 1151 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992).

The Tenth Circuit first held that judicial review of the director's decision to appoint a conservator is limited to the information or administrative record before the director when the decision to appoint was made. 934 F.2d at 1140. The Tenth Circuit offered several reasons for this limited scope of review. FIRREA authorizes the director to appoint a conservator or receiver if "in the opinion of the Director, a ground for the appointment ... exists." 12 U.S.C. § 1464(d)(2)(E). To assure a quick response to the danger of an association's swift loss of liquidity, FIRREA gives the director the power to act promptly in appointing a conservator once the director believes that a statutory ground for appointment exists. 934 F.2d at 1137. Generally, when Congress fails to articulate a standard and procedure for judicial review, the courts limit their review to the administrative record. *Id.* The language of § 1464(d)(2)(E) does not mandate de novo review with a full adversarial

evidentiary hearing. *Id.* at 1139. Persuaded that these reasons sustain a limited scope of review, the Tenth Circuit found that the district court erred in hearing additional evidence, making credibility determinations, and deciding the appointment was wrong on the weight of the court's own findings. *Id.*

As for the standard of review, the Tenth Circuit looked to the Administrative Procedure Act ("APA") for guidance since § 1464(d)(2)(E) failed to provide one. The APA directs an arbitrary and capricious standard of review, 5 U.S.C. § 706(2)(A), unless the statute prohibits judicial review or the "agency action is committed to agency discretion by law," 5 U.S.C. § 701(a). 934 F.2d at 1141. De novo review is appropriate in two circumstances, but neither one is present here. 934 F.2d at 1141.[3] In an apparent effort to bolster its conclusion, the Tenth Circuit next observed:

> We believe it significant to note the case before us does not involve the more severe decision to appoint a conservator for the purpose of liquidation. Indeed, a conservator ordinarily acts as a guardian or a protector. The decision to appoint a conservator is not a judgment to divest the owner of his property. Rather, it is a judgment that the owner is unable or unwilling to properly manage or control the assets and it is an attempt to put the institution back into a safe and sound condition. H.R.Rep. No. 101–54(I), at 126, 211. This fact permits both a restricted scope of review and a deferential standard of review.

934 F.2d at 1141. The Tenth Circuit followed this statement with the citation and discussion of two other circuit court opinions applying an arbitrary and capricious standard of review. 934 F.2d at 1141 (citing *Woods v. FHLBB,* 826 F.2d 1400 (5th Cir. 1987), *cert. denied,* 485 U.S. 959, 108 S.Ct.

1221, 99 L.Ed.2d 422 (1988); *Guaranty Sav. & Loan Ass'n v. FHLBB,* 794 F.2d 1339 (8th Cir.1986)). "We are persuaded by the analysis employed in these decisions and believe it is applicable to FIRREA and, therefore, to the case before us." 934 F.2d at 1142. Curiously, both cases involved the appointment of a receiver instead of a conservator.[4] The Tenth Circuit held that the district court articulated the correct standard but it erred in applying what, in effect, was a de novo standard of review. 934 F.2d at 1142. The Tenth Circuit found substantial evidence in the administrative record to support each of the director's three grounds for appointing a conservator. *Id.* at 1143–49.

By order dated July 16, 1992, the director replaced the conservator for FSA with a receiver pursuant to 12 U.S.C. § 1464(d)(2)(F). As for his grounds and authority, the director stated in the order:

> The Director, or his or her designee, based upon the administrative record, and for the reasons set forth in the supporting legal and supervisory memoranda dated July 15, 1992, contained in the administrative record from various offices within the OTS finds and determines that authority for the replacement of the RTC as conservator with the RTC as receiver for OLD THRIFT exists in that the Director is authorized to replace a conservator with a receiver for any savings association without any prior notice, hearing, or any other action pursuant to section 5(d)(2)(F) of the Home Owners' Loan Act ("HOLA").

(Dk. 1, Complaint, Ex. 1). On August 14, 1992, the plaintiffs simultaneously filed in bankruptcy court and in district court complaints seeking the removal of the receiver "on the basis of the findings and determinations ... in *Franklin Savings Association v. Director, Office of Thrift Supervision,* 742

---

**3.** The two circumstances are where (1) the agency's action is adjudicatory in nature and its fact-finding procedures are inadequate; and (2) issues not raised before the agency are raised in a proceeding to enforce a nonadjudicatory action. *Citizens to Preserve Overton Park, Inc. v. Volpe* 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1973). The Tenth Circuit distinguished each circumstance. FIRREA does not require the director to conduct adjudicatory proceedings

in making the appointment decision. Instead, it vests broad regulatory and enforcement powers with the director. FSA's action to remove the conservator is not a proceeding to enforce a nonadjudicatory action. 934 F.2d at 1141 n. 7.

**4.** The Tenth Circuit relied on these same decisions in its holding on the limited scope of review. 934 F.2d at 1137–38.

**1418**

F.Supp. 1089 (D.Kan.1990)," *rev'd,* 934 F.2d 1127 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992). (Dk. 1, Complaint at pp. 14–15).

The defendant moves to dismiss arguing first that the Home Owners' Loan Act ("HOLA"), as amended by FIRREA, precludes judicial review of the director's decision to replace a conservator with a receiver. The defendant next contends the replacement decision is wholly discretionary with the director and, therefore, is not subject to judicial review. Finally, the defendant challenges FSC's standing to bring this action. The court will address these issues in that order.

### STATUTORY BAR TO JUDICIAL REVIEW

The defendant reads HOLA literally to allow judicial review of only the initial appointment of a conservator or receiver and to preclude judicial review of the replacement decision. Though recognizing that HOLA expressly provides for judicial review of only the initial appointment, the plaintiffs counter that inequitable and unconstitutional results come from such a literal reading.

■■■ A federal court has only that jurisdiction provided by Article III of the Constitution or by a statutory enactment of Congress. *Bender v. Williamsport Area School Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). Consistent with that premise, courts are to construe jurisdictional statutes "with precision and with fidelity to the terms by which Congress has expressed it wishes." *Palmore v. United States,* 411 U.S. 389, 396, 93 S.Ct. 1670, 1675, 36 L.Ed.2d 342 (1973) (quoting *Cheng Fan Kwok v. INS,* 392 U.S. 206, 212, 88 S.Ct. 1970, 1974, 20 L.Ed.2d 1037 (1968)). Stated another way, courts must guard against judicial interpretations that expand their jurisdiction beyond Congressional mandate. *American Fire & Cas. Co. v. Finn,* 341 U.S. 6, 17, 71 S.Ct. 534, 541, 95 L.Ed. 702 (1951). With this in mind, the place to begin is the statute itself.

■■■ The provision under which the plaintiffs bring their actions is 12 U.S.C. § 1464(d)(2)(E), which reads in pertinent part:

**(E) Power of appointment; judicial review**

The Director shall have exclusive power and jurisdiction to appoint a conservator or receiver for a Federal savings association. If, in the opinion of the Director, a ground for the appointment of a conservator or receiver for a savings association exists, the Director is authorized to appoint ex parte and without notice a conservator or receiver for the savings association. In the event of such appointment, the association may, within 30 days thereafter, bring an action in the United States district court for the judicial district in which the home office of such association is located, . . . , for an order requiring the Director to remove such conservator or receiver, and the court shall upon the merits dismiss such action or direct the Director to remove such conservator or receiver.

In "plain language," this provision grants the director the exclusive power to appoint a conservator or receiver if he thinks a statutory ground for appointment exists. *Franklin Sav.,* 934 F.2d at 1137. It also "clearly authoriz[es] judicial review" of "whether the facts relied on by the director show a statutory ground for the appointment to exist." *Id.* at 1137, 1141.

The relevant meaning of subsection (E) is revealed in large part by the context created by the two provisions which follow it:

**(F) Replacement**

The Director may, without any prior notice, hearing, or other action, replace a conservator with another conservator or with a receiver, but such replacement shall not affect any right which the association may have to obtain judicial review of the original appointment, except that any removal under this subparagraph shall be removal of the conservator or receiver in office at the time of such removal.

**(G) Court action**

Except as otherwise provided in this subsection, no court make take any action for or toward the removal of any conservator or receiver or, except at the request of the Director, to restrain or affect the exer-

cise of powers or functions of a conservator or receiver.

Subsection (F) authorizes the director to replace a conservator without providing for judicial review of the replacement decision. Subsection (G) "prohibits untimely challenges to the receiver's [or conservator's] appointment." *Coit Independence v. FSLIC*, 489 U.S. 561, 575, 109 S.Ct. 1361, 1369, 103 L.Ed.2d 602 (1989).

### Statutory Construction

■ The cardinal canon of statutory construction is that when the literal language is clear and unambiguous the judicial inquiry begins and ends with the statute's plain language. *Connecticut National Bank v. Germain*, — U.S. —, — – —, 112 S.Ct. 1146, 1149–50, 117 L.Ed.2d 391, 397–98 (1992). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Id.* at —, 112 S.Ct. at 1149, at 397 (citations omitted). This "strong presumption . . . is rebutted only in 'rare and exceptional circumstances.'" *Ardestani v. INS*, — U.S. —, —, 112 S.Ct. 515, 520, 116 L.Ed.2d 496, 505 (1991) (quoting *Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 702, 66 L.Ed.2d 633 (1981)). The rare and extraordinary case is where "the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters." *United States v. Ron Pair Enterprises*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989). This contrary legislative intent must be "clearly expressed." *Ardestani*, — U.S. at —, 112 S.Ct. at 520, 116 L.Ed.2d at 505.

■■ Because the meaning of language, plain or not, turns on context, a statute must be read as a whole. *King v. St. Vincent's Hospital*, — U.S. —, —, 112 S.Ct. 570, 573, 116 L.Ed.2d 578, 586 (1991). Reading together subsections (E), (F) and (G) of § 1464(d)(2), the literal language precludes judicial review of the director's replacement of a conservator with another conservator or a receiver. Subsection (E) authorizes the appointment of a conservator and allows for judicial review of the appointment decision. Subsection (F) authorizes the replacement of a conservator and is silent on judicial review of the replacement decision. Subsection (G) forecloses any judicial action to remove a conservator or receiver unless the statute otherwise provides for the judicial action. In other words, subsection (E) is the exclusive avenue for judicial review. *See Haralson v. Federal Home Loan Bank Bd.*, 837 F.2d 1123, 1125 (D.C.Cir.1988); *RTC v. Commerce Partners*, 132 F.R.D. 443, 446 (W.D.La.1990). Together, these provisions specify without the slightest ambiguity that a director's authority to replace a conservator is governed by subsection (F) and not (E) and that the director's replacement is not subject to judicial review.

■ A closer reading of the plain language fully supports this conclusion. Subsection (F) clearly distinguishes between the act of appointing and the act of replacing. For each provision to retain a purpose, subsection (F) must control the replacement of a conservator while subsection (E) must govern the original appointment. From these unambiguous terms, the court must presume that Congress intended a distinction between appointment and replacement with separate statutory treatment for each. Appointment is subject to the director believing a statutory ground exists and to judicial review. Replacement is not tied to any statutory grounds but lies within the director's discretion, and it is not a matter for judicial review.

Other language from these provisions fortifies this literal reading. First, subsection (E) requires the action for judicial review to be brought within 30 days of "such appointment." "Such appointment" is not a term of sufficient breadth to encompass the replacement of a conservator. "Such" refers back to the original appointment of a conservator or receiver when a statutory ground for appointment exists in the director's opinion. Second, what Congress intended as the subject of judicial review under subsection (E) is seen in the language of subsection (F), which reads: "replacement shall not affect any right which the association may have to obtain judicial review of the original appointment." Instead of offering, mentioning or even alluding to any right to review the replacement decision, subsection (F) only en-

sures that an association's right to judicial review of the "original appointment" is not prejudiced by the replacement. Most importantly, the effect of that silence is to preclude judicial review upon the express terms of subsection (G).

### Gibraltar Savings

Against this cascade of plain language, the plaintiffs offer the only written decision on this issue apparently available to the public, *Gibraltar Savings v. Ryan,* No. 89–3207–OG, 1990 WL 484155, 1990 U.S.Dist. LEXIS 18386 (D.D.C. July 10, 1990). The court does not find this case persuasive or applicable on its facts. Gibraltar Savings did not challenge the original appointment of the conservator. Moreover, the director later ordered both the replacement of the conservator and the appointment of the receiver upon a finding of insolvency. The district court considered these facts critical to its conclusion:

> Although the replacement was made pursuant to subdivision (F), the appointment was made pursuant to subdivision (E). As a factual matter, Gibraltar is seemingly entitled to seek judicial review of the receiver's appointment under the 30–day review provision of subdivision (E).
>
> . . . .
>
> Grammatical analysis of a statute provides one tool with which to divine Congress' intent. In the end, however, "justice should not be the handmaiden of grammar." *Value Oil Co. v. Irvington* [152 N.J.Super. 354] 377 A.2d 1225, 1231 (N.J.Super.1977). Although subsection (F) is silent as to judicial review, and although a technical reading of the statutory language lends support to the Director's position, other factors lead this Court to conclude that Congress did not intend to preclude judicial review in this case.
>
> First, and foremost, nothing in the statutory language specifically forecloses judicial review in a case such as this. There is no language stating that the replacement of a conservator pursuant to subdivision (F) is immune from a challenge brought under subdivision (E). Indeed, subdivision (F) may fairly be construed as simply empowering the Director to make replace-

ments ex parte and without notice, rather than as disempowering a court from later reviewing the propriety of the Director's actions. After all, subdivision (F) by its terms empowers the Director to replace a conservator "without any prior notice, hearing, or other action," 12 U.S.C. § 1464(d)(2)(F) (emphasis added), thereby implying that an association's opportunity for a subsequent hearing is not foreclosed. More important, and as noted above, this case involves more than just a replacement; it also involves an appointment. See Ord. No. 89–350 (Def. Ex. 1), at 2, ¶ 2. Subdivision (E) authorizes a judicial challenge within 30 days of the Director's "appointment of a conservator or receiver." 12 U.S.C. § 1464(d)(2)(E). That language is broad enough to encompass the situation presented here. In sum, nothing in the statutory language compels the conclusion that the replacement of a conservator under subdivision (F) may not also encompass the simultaneous appointment of a receiver under subdivision (E).

1990 WL 484155 at *4–*5, 1990 U.S.Dist. LEXIS 18386 at *14 (underlining added). Because the court reiterated the situation facing it in construing the statute, it is fair to limit the opinion to its facts. Indeed, the court considered it "more important" that the director had actually "appointed" the receiver than what it had to say about the statute's meaning. In the instant case, the plaintiffs vigorously challenged the appointment of the conservator, and the director did not "appoint" the receiver but replaced the conservator without finding and stating a factual circumstance to justify the action.

The court also is not persuaded by the statutory interpretation arrived at in *Gibraltar Savings*. The court first said there was "an ambiguity raised by the plain language of subsections" (E) and (F). 1990 WL 484155 at *2, 1990 U.S.Dist. LEXIS 18386 at *5. Though it did not say what those different permissible interpretations were, the court apparently considered the parties' arguments to reveal the ambiguity. The plaintiff there argued judicial review was available under the appointment provision of subdivision (E) while the defendant contended the replace-

ment provision of subdivision (F) precluded judicial review. *Id.* 1990 WL 484155 at *3, 1990 U.S.Dist. LEXIS 18386 at *5–*6. These arguments do not suggest an ambiguity for the plain language of (E) and (F) distinguishes between appointment and replacement and treats each separately for purposes of the director's authority to act and judicial review of the same. If there was any ambiguity in *Gibraltar Savings*, it arose not from the terms of (E) and (F) but from the fact that the director there both replaced the conservator and appointed a receiver on a factual finding of insolvency. The court admitted as much, for it said the defendant's position was supported by the "plain language" and a "technical reading" of the provisions. 1990 WL 484155 at *3, 1990 U.S.Dist. LEXIS 18386 at *6. Knowing what subsection (E) says about judicial review and what subsection (F) does not say about it, any implication that judicial review is available under the latter subsection is possible only by overlooking the prohibition in subsection (G) against judicial actions not otherwise provided.

If the meaning of the statutory provisions is plain, the court in *Gibraltar Savings* should have ended its judicial inquiry unless this is one of those rare and extraordinary cases where the "literal application of a statute will produce a result demonstrably at odds with the intention of its drafters." *Ron Pair Enterprises*, 489 U.S. at 242, 109 S.Ct. at 1031. As for evidence of a contrary legislative intent, the court first noted that subsection (F) did not "specifically" foreclose judicial review. This is not significant for Congress in subsection (G) did foreclose judicial review unless expressly provided by statute. The court next considered subdivision (F) to imply subsequent judicial review because it empowered the director only to act "without any prior notice, hearing, or other

action." For this to imply such a congressional intent, one must ignore not only the preclusive effect of subsection (G), but also Congress' ability to provide for judicial review as it did in subsection (E). From these arguments, the court cannot find a clearly expressed legislative intent that contradicts the plain language. Nor can the court find a result so absurd that Congress could not have intended such a result.

### Due Process

■ The court in *Gibraltar Savings* concluded with distinguishing the powers of a conservator to manage and conserve the associations with the receiver's authority to liquidate them. From this, the court raised the constitutional problems if the statute did deny judicial review of the director's replacement of a conservator with a receiver.[5] It is from this basis that the plaintiffs launch their strongest attack. They refer to the dicta in *Franklin Savings*, 934 F.2d at 1141, where the Tenth Circuit noted that the case involved the less severe appointment of a conservator rather than a receiver and that this permitted "a restricted scope of review and a deferential standard of review." The plaintiffs consider the consequences of appointing a receiver to liquidate of sufficient severity that a separate and more penetrating judicial review is necessary. The plaintiffs also contend such judicial review would prevent manipulation by the director, would satisfy the implied requirements in *Franklin Savings*, and would meet the constitutional demands of due process. The court is not persuaded that these arguments justify disregarding the plain language of subsections (E), (F), and (G).

It is true that a conservator's statutory authorities are nearly coextensive with those of a receiver, but the different purpose and additional powers given to the receiver are

---

5. In this court's opinion, one cannot turn to the rule quoted in *Gibraltar Savings* that " 'an Act of Congress ought not be construed to violate the Constitution if any other possible construction remains available.' " 1990 WL 484155 at *15, 1990 U.S.Dist. LEXIS 18386 at *17. This rule "reflects the prudential concern that constitutional issues not be needlessly confronted, but also recognizes that Congress, like this Court, is bound by and swears an oath to uphold the

Constitution." *DeBartolo v. Fla. Gulf Coast Tr. Coun.*, 485 U.S. 568, 575, 108 S.Ct. 1392, 1397, 99 L.Ed.2d 645 (1988). But this rule operates only when an alternative interpretation exists that is not plainly contrary to Congress' intent. *Id.; see Blanchette v. Connecticut General Ins. Corporations*, 419 U.S. 102, 134, 95 S.Ct. 335, 354, 42 L.Ed.2d 320 (1974). Another acceptable construction, which is consistent with Congress' clearly expressed intent, is not possible here.

not without significance. *See* 12 U.S.C. § 1821(d)(2)(D), (E), (F), (G), (H) and (I); 12 U.S.C. § 1441a(b)(4). As conservator, the RTC conducts the institution's daily business and is to take any action necessary to bring the institution into a "sound and solvent condition." 12 U.S.C. § 1821(d)(2)(D). As receiver, the RTC assumes the additional powers of placing the institution in liquidation and taking measures to realize on the institution's assets. 12 U.S.C. § 1821(d)(2)(E). *See Gross v. Bell Sav. Bank PaSA,* 974 F.2d 403, 407 (3rd Cir.1992); *Resolution Trust v. CedarMinn Bldg. Ltd. Partner.,* 956 F.2d 1446, 1454 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 94, 121 L.Ed.2d 56 (1992). Even though there is this difference in purposes and powers, the question remains whether this alone is cause for implying a right to judicial review when the plain language of the statute is to the contrary.

■ The most drastic action that a regulated banking institution can suffer is the agency's seizure and placement into conservatorship or receivership. When a conservator is replaced with a receiver, the institution's owners are not deprived of more property but their deprivation changes in character from temporary and nonfinal to permanent and final. The plaintiffs assume the character change entitles them to another hearing and opportunity to challenge the director's decision to seize the institution. Other than the dicta in *Franklin Savings* and the brief analysis in *Gibraltar Savings,* the plaintiffs' assumption is not supported by statute or by relevant case law.

■ If the director believes that any of the statutory grounds for appointment exist, then the director may appoint either a conservator or receiver. 12 U.S.C. § 1464(d)(2)(E). The statute does not specify any standards to govern the director's choice between the two. Congress apparently considered the ostensible deprivation to

occur with the institution's seizure while the director's decision to attempt a salvage through a conservatorship or to liquidate through a receivership was only a matter of the director exercising his expert judgment and discretion in managing, controlling and disposing of the assets of the failing institution. It also follows that the director's decision to later replace a conservator with a receiver is not another seizure of the institution but simply involves the director's exercise of the same expertise and discretion. In both circumstances, Congress apparently was satisfied that due process required giving the association the opportunity to challenge the seizure and not each of the director's subsequent business decisions.

"[C]onsiderations of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." *Cafeteria & Restaurant Workers Union v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961).[6] Courts generally have not imposed any additional due process requirements beyond those specified by Congress for the seizure of a financial institution and the appointment of a receiver or conservator. *See, e.g., Fahey v. Mallonee,* 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947); *Franklin Savings,* 934 F.2d at 1140; *First Federal Sav. Bank and Trust v. Ryan,* 927 F.2d 1345, 1357–59 (6th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 187, 116 L.Ed.2d 148 (1991); *Haralson v. Federal Home Loan Bank Bd.,* 837 F.2d at 1126–27; *Woods v. Federal Home Loan Bank Bd.,* 826 F.2d at 1410–13; *cf. FDIC v. Mallen,* 486 U.S. 230, 108 S.Ct. 1780, 100 L.Ed.2d 265 (1988) (the important governmental interest justified the FDIC's prompt suspension of an indicted official of a federally insured bank). Without exception,

---

**6.** In a latter case, the Supreme Court identified three factors to weigh in deciding what procedural safeguards are necessary in administrative decision-making:

First, the private interest that will be affected by the official action; second, risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if

any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

the courts agree that in this setting a post-deprivation opportunity for judicial review extends all the procedural protection required by the Constitution.

When analyzing the issue closely, the courts have stressed the federal government's compelling interest in regulating banks. "[I]t has long been recognized that the banking system is subject to government regulation and protection in the interest of economic stability." *First Federal Sav. Bank and Trust v. Ryan,* 927 F.2d at 1345. "Banking is one of the longest regulated and most closely supervised of public callings." *Fahey v. Mallonee,* 332 U.S. at 250, 67 S.Ct. at 1554. Prompt action protects the depositors' interests and maintains public confidence in the financial institutions.[7] *Mallen,* 486 U.S. at 230, 108 S.Ct. at 1780. When an institution fails, the loss falls heaviest on the federal insurance funds. *Woods,* 826 F.2d at 1411. Consequently, the federal boards and agencies charged with regulating financial institutions were given "the strongest powers constitutionally possible in order to preserve depositor confidence in the savings institutions of this country and to minimize loss and depletion of FSLIC insurance funds." *Id.*

As for the interests of the association and its owners and officers, they are plainly inferior to the governmental interest. *Id.* The association's financial strength is due in large part to the government's guarantee on the deposits. "With the deposits this security attracts, institutions make investments, ac-quire property, and extend loans." *Id.* When the association and its owners accepted these benefits from federal insurance, they knew what came along with them—extensive regulation, continuous federal scrutiny, and the chance of their institution being seized and placed into conservatorship or receivership. In a similar vein, the Supreme Court in *Fahey* held that the owners of the savings and loan association by availing themselves of the right to conduct a banking business under the federal statute were estopped from challenging the constitutionality of the provisions of that same statute which prescribed the terms and conditions for the appointment of a conservator. 332 U.S. at 255–56, 67 S.Ct. at 1556–57.

The opportunity for judicial review of the original appointment of a conservator is adequate to insure against any risk of erroneous "deprivation" in the subsequent conversion from a conservator to a receiver. HOLA, as amended by FIRREA, does not require any additional grounds or reasons for the director to appoint a receiver over a conservator. Nor does HOLA express any grounds for when the director may or should replace a conservator with a receiver. Logically then, if the original administrative record supports the appointment of a conservator, it also supports any decision to replace the conservator.[8] The standard and scope of judicial review for the appointment of a receiver are the same as those governing the appointment of a conservator.[9] Due process

---

7. A related factor is the need for prompt judicial review. The seizure of a financial institution is a drastic action that carries immediate and serious consequences for both the institution and its owners. Until judicial review is completed or waived, the conservator or receiver serves subject to removal. This contingency affects the finality of not only his actions but his financial strategies for managing the institution. If the conservator or receiver is removed, the institution's practices, policies and strategies may change again. When an institution on shaky financial grounds undergoes several significant and delayed changes, the risk of failure necessarily increases. To minimize this risk of failure and the cost to owners from an erroneous deprivation, Congress provided for prompt judicial review brought within thirty days of the appointment. A restricted scope of review and a deferential standard of review are consistent with these goals in that they avoid protracted discov-ery, lengthy hearings, and the delay associated with them.

8. This is particularly true if the director's replacement occurs shortly after the original appointment. When the passage of time is longer, it is simply a matter of the director now learning the full extent of the original problems after having conducted the institution's business for that period of time.

9. In this court's opinion, the dicta in *Franklin Savings,* 934 F.2d at 1141, does not require a more extensive scope of review or a more penetrating standard of review when the director appoints a receiver. The dicta appears to have been included more to allay concerns over deferential standards than to suggest the need for more intrusive ones when a receiver is appointed. The Tenth Circuit did not cite any authority for applying different standards under

requires only a meaningful opportunity, not multiple ones. *Goldberg v. Kelly,* 397 U.S. 254, 267 n. 14, 90 S.Ct. 1011, 1020 n. 14, 25 L.Ed.2d 287 (1970). The wisdom of such a rule is most evident here. For as revealed in their complaint, the plaintiffs principally want the chance to litigate again the same issues and to present the same evidence that was heard by Judge Saffels. The availability of a hearing to challenge the initial appointment affords the plaintiffs all the protection required by due process when the conservator is later replaced by another conservator or a receiver. Moreover, the court has no reason to doubt that this opportunity for judicial review accomplishes a constitutionally tolerable level of accuracy in the OTS' application of the law to the facts.

Finally, the plaintiffs argue the statute is vulnerable to unfair manipulation when the director can appoint a conservator first and then replace it with a receiver and escape judicial review. The court fails to appreciate the significance of this argument. It should be no surprise to anyone involved in the banking business that "conservators of failed institutions are often replaced by receivers." *Resolution Trust v. CedarMinn Bldg. Ltd. Partner,* 956 F.2d at 1454–55 (citations omitted). The seizure of FSA and the likelihood of a receivership are circumstances that obviously motivated the plaintiffs in aggressively challenging the appointment of the conservatorship all the way to the Supreme Court. The standard and scope of judicial review are the same whether the director initially appoints a conservator or a receiver. Consequently, the OTS is not able to avoid a more scrutinizing degree of judicial review by first appointing a conservator. Furthermore, the

seized association has every reason and opportunity to challenge the seizure and the original appointment on all stated grounds. For all of these reasons, the court reads § 1464(d)(2) of HOLA to preclude judicial review of the director's replacement of a conservator with another conservator or a receiver.

## DISCRETIONARY MATTER

The defendant, in addition, argues that the director's decision is not subject to judicial review for it is a matter vested in the director's discretion. Much of what the court has said in interpreting the subsections of § 1464(d)(2) is equally applicable here and will not be repeated. The court agrees with the defendant that the statute does not provide any meaningful standard for this court to judge the director's decision to replace a conservator. Subsection (F) empowers the director to replace a conservator without reference to any required grounds or findings. In effect, the court has no law by which to judge the propriety of the replacement. *See Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971); *American Bank, N.A. v. Clarke,* 933 F.2d 899, 902 (10th Cir.1991). Unlike subsection (E), subsection (F) does not require the director to form or express any opinion on why a replacement is necessary. The structure of the statute, as a whole, persuades this court that the director's decision to replace is committed to his discretion and is not subject to judicial review.

§ 1464(D)(2)(E). The panel's reasons for adopting the particular standards apply with equal force when the administrative action is the appointment of a receiver rather than a conservator. In fact, the panel took the standards from cases involving the appointment of a receiver instead of a conservator. *See Woods,* 826 F.2d at 1402; *Guaranty Sav. & Loan,* 794 F.2d at 1340. In the opinion of one article writer, *Franklin Savings* "is thoroughly reasoned and constitutes, ..., a correct exposition of the principles of administrative law applicable to reviewing the appointment of both conservators and receivers." Lawrence G. Baxter, *Symposium: Financial Institutions and Regulations, The S & L Crisis: Death and Transfiguration: Judicial Re-*

*sponses to the Recent Enforcement Activities of the Federal Banking Regulators,* 59 Fordham L. Review 193 (1991). At least two courts have relied on the standards from *Franklin Savings* in reviewing the appointment of a receiver. *See, e.g., First American Federal Bank v. Ryan,* 791 F.Supp. 253, 254 (D.Ariz.1992); *Gibraltar Sav. v. Ryan,* 772 F.Supp. 1290, 1292–93 (D.D.C.1991) (Director's replacement of conservator with a receiver and appointment of a receiver). This court also believes the Tenth Circuit did not intend that whenever a receiver was appointed that the courts would sit as a higher regulatory body and make the same technical and predictive judgments as the OTS but without the knowledge, experience and expertise of the OTS.

## STANDING

The defendant's last argument is that assuming the court has jurisdiction to review the director's decision to replace a conservator then FSC lacks standing to challenge it. The defendant's contention is not barred by res judicata or collateral estoppel for the Tenth Circuit reversed and vacated Judge Saffels' earlier decision which necessarily includes his ruling on standing. Since the parties apparently would welcome the Tenth Circuit's decision on this issue, this court will rule that FSC is without standing. The court relies on the plain language in § 1464(d)(2)(E) and the Sixth Circuit's decisions of *United Liberty Life Insurance Co. v. Ryan*, 985 F.2d 1320 (6th Cir.1993), and *Marietta Franklin Securities Co. v. Muldoon*, 972 F.2d 128, 129 (6th Cir.1992). This interpretation does not deny the plaintiffs an avenue for judicial review. The capacity to sue is not lost to the conservator or receiver but remains with the board of directors of the failed institution. *See, e.g., Gaubert v. Federal Home Loan Bank Bd.*, 863 F.2d 59, 67 (D.C.Cir.1988).

IT IS THEREFORE ORDERED that the defendant's motion to dismiss (Dk. 12) is granted.