**FRANKLIN SAVINGS CORPORATION and Franklin Savings Association, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 98–697 C.**

United States Court of Federal Claims.

April 28, 2000.

---

R. Pete Smith, Kansas City, MO, for plaintiffs. Jonathan A. Margolies and Jerry Stouck, of counsel.

Luke Levasseur, with whom were Assistant Attorney General Frank W. Hunger, David M. Cohen and Jeanne E. Davidson, Washington, DC, for defendant. Carolyn J. Buck, Thomas J. Segal, Elizabeth R. Moore and Martin Jefferson Davis, Office of Thrift Supervision, of counsel.

## OPINION and ORDER

TURNER, Judge.

Franklin Savings Corporation (FSC) owns most of the stock of Franklin Savings Association (FSA). At all relevant times prior to February 15, 1990, FSA conducted business as a Kansas chartered, but federally insured, savings and loan association. On that date, pursuant to procedures established in the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), 12 U.S.C. § 1461 *et seq.*, the Office of Thrift Supervision (OTS) caused the appointment of the Resolution Trust Corporation (RTC) as a conservator of FSA; on July 16, 1992, the conservatorship was converted to a liquidating receivership. Thereafter, the assets of FSA were liquidated, and the entity was dissolved as an operating institution.

Plaintiffs assert both a Fifth Amendment taking claim and a breach of contract claim arising from the takeover and eventual liquidation of FSA. Plaintiffs place heavy emphasis upon their assertion that FSA was actually solvent under applicable accounting standards at the time it was initially placed in conservatorship. Plaintiffs further assert bad faith and reckless conduct by government regulators in connection with the seizure and liquidation of FSA.

This opinion addresses defendant's motion filed on April 12, 1999 to dismiss both counts of the complaint for, *inter alia*, failure to state a claim on which relief may be granted. (At this juncture, defendant interposes no objection to the jurisdiction of the court or the standing of either plaintiff with respect to either of plaintiffs' claims. Tr. (11/9/99) at 11.)

We conclude that plaintiffs' taking claim must be dismissed for failure to state a claim for which relief may be granted. We further conclude that the government's motion to dismiss with regard to plaintiffs' breach of contract claim should be denied without prejudice, since a dispositive ruling on the contract claim at this juncture would be premature.

## I

This litigation was transferred to this court by the federal district court in Kansas. The background of this litigation before transfer is recounted in numerous published opinions.[1] For this opinion, it will suffice to state

---

1. There were three rounds of litigation involving various phases of the seizure and liquidation of FSA. The first, resulting from FSA's statutory challenge to the appointment of a conservator, generated a trial court opinion, *Franklin Sav. Ass'n v. Director of The Office of Thrift Supervi-*sion, 742 F.Supp. 1089 (D.Kan.1990), (holding that OTS improperly placed FSA into conservatorship and ordering its return to its management) and an appellate opinion, *Franklin Sav. Ass'n v. Director, Office of Thrift Supervision*, 934 F.2d 1127, 1138 (10th Cir.1991), *cert. den.*, 503

the following: FSC acquired FSA in 1973. As the bank grew under FSC's ownership, its deposits increased from $200 million to over $11 billion. With this growth, FSA's portfolio changed. FSA began to hold various higher risk assets such as mortgage-backed derivatives and high risk, non-investment grade bonds. As a result of this newly diversified portfolio, federal bank regulators grew concerned about FSA's banking practices. By February 15, 1990, the regulators concluded that the stated asset value of many of FSA's hedged funds should be considered losses immediately, although FSA's accounting methods would have allowed recognizing such losses in subsequent years. As a result, OTS believed that the bank was insolvent and that bank regulators needed to seize control of the bank immediately.

Following seizure in February 1990, plaintiffs immediately challenged its propriety in a district court action pursuant to 12 U.S.C. § 1464(d)(2)(B) (the critical paragraph was lettered (E) at the time of suit), but were ultimately unsuccessful. See footnote 1 for recitation of the background of this litigation; reference is made to the opinions cited therein for a complete history of the case.

FSC filed a bankruptcy petition on July 26, 1991. In response, OTS filed two claims against FSC. One claim asserted that FSC was indebted to FSA (and RTC as its conservator) in the amount of $271.8 million based upon FSC's failure to maintain the net worth obligations of FSA consistent with federal regulations. OTS's second claim was for $100,000 for fees assessed from RTC's administration of FSA.

FSC filed a counterclaim, asserting that OTS's appointment of a conservator for the bank constituted a Fifth Amendment taking. (Presumably, a counterclaim for breach of contract was also filed in that proceeding, although the current record in this court is not clear on this point.) Those claims were transferred to this court and are the claims addressed in this opinion. (The initial pleading filed by plaintiffs in this court, on September 30, 1998, was originally entitled "Second Amended Counterclaim Complaint," but the title has been changed to "Amended Complaint.)" To date, this pleading is the only complaint filed in this court.

## II

Plaintiffs' first claim is that OTS's seizure and liquidation of FSA constituted a compensable taking. Compl. ¶¶ 34–42. Although, as detailed below, Federal Circuit authority would appear to preclude a taking claim grounded on such regulatory conduct, plaintiffs assert that their claim is distinguishable from those presented in precedent because FSA was actually solvent at the time of seizure and the regulatory decision-makers were motivated by bad faith and acted in reckless disregard of plaintiffs' rights.

## A

■ The Federal Circuit has never upheld a claim that a seizure of a financial institution under the statutes and regulations designed to insure safe and secure banking institutions constituted a taking. On three occasions, the Federal Circuit has explicitly held that such seizure of a financial institution does not constitute a Fifth Amendment taking. *Branch v. United States*, 69 F.3d 1571, 1575 (Fed.Cir.), *cert. den.*, 519 U.S. 810, 117 S.Ct. 55, 136 L.Ed.2d 18 (1996); *Golden Pac. Ban-*

U.S. 937, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992), (reversing trial court decision and holding that OTS's appointment of receiver was supported by substantial evidence and in accordance with applicable law).

In July 1992, OTS replaced the conservator of FSA with a receiver. The second round of litigation resulted from plaintiffs' challenge to such appointment of a receiver. Both the district court in Kansas and the Tenth Circuit upheld the OTS's receivership decision. *Franklin Sav. Ass'n v. Office of Thrift Supervision*, 821 F.Supp. 1414 (D.Kan.1993), *aff'd*, 35 F.3d 1466 (10th Cir. 1994).

The third round of litigation was commenced by plaintiffs as a suit against the United States under the Federal Tort Claims Act (FTCA). The suit resulted in a trial court opinion and an appellate opinion, both holding that RTC's conduct as conservator or receiver fell within discretionary-function exception of FTCA. *Franklin Sav. Corp. v. United States*, 970 F.Supp. 855 (D.Kan.1997), *aff'd*, 180 F.3d 1124 (10th Cir.), *cert. den.*, —— U.S. ——, 120 S.Ct. 398, 145 L.Ed.2d 310 (1999).

corp v. United States, 15 F.3d 1066, 1073–74 (Fed.Cir.), cert. den., 513 U.S. 961, 115 S.Ct. 420, 130 L.Ed.2d 335 (1994); California Hous. Secur., Inc. v. United States, 959 F.2d 955, 958 (Fed.Cir.), cert. den., 506 U.S. 916, 113 S.Ct. 324, 121 L.Ed.2d 244 (1992).

The fundamental rationale of these Federal Circuit cases is that banking is a highly regulated industry and that one engaged in that business is deemed to understand that if his bank becomes insolvent or, in the judgment of the regulatory authorities, is engaged in unsafe or unsound banking practices, the bank may be seized by government officials and be operated and/or liquidated by them.

Plaintiffs distinguish these three Federal Circuit cases as "absolutely irrelevant to the takings issue in this case" because they "invariably involve *insolvent* institutions." Pl. Br. (5/27/99) at 14 (emphasis in original). While it is true that *Branch* and *California Hous. Secur.* addressed only seizures of insolvent institutions, *Golden Pac. Bancorp,* like this case, dealt with an assertion that the financial institution involved was actually solvent. In *Golden Pac. Bancorp,* the Federal Circuit noted, 15 F.3d at 1075, that the shareholder-plaintiffs' argument that the regulatory official "closed a solvent Bank and therefore failed to advance a legitimate government interest" was unavailing. In prior litigation under a tort theory in the U.S. Court of Appeals for the District of Columbia, the same plaintiffs had asserted "that a careful review of all the documentation should have led the [regulatory official] to conclude that the Bank was in fact solvent and that it had sufficient liquidity to meet depositors' demands." *Golden Pac. Bancorp v. Clarke,* 837 F.2d 509, 511 (D.C.Cir.), cert. den., 488 U.S. 890, 109 S.Ct. 223, 102 L.Ed.2d 213 (1988).

In the taking litigation, the Federal Circuit rejected the argument that a regulatory official "closed a solvent Bank and therefore failed to advance a legitimate government interest." 15 F.3d at 1075. The Federal Circuit stated:

Golden Pacific is arguing that the [regulatory official] "made a mistake" when he closed the Bank and that therefore compensation is due under the Fifth Amendment. This argument assumes, of course, that Golden Pacific had either the historically rooted expectation of compensation or reasonable investment-backed expectation necessary to support a taking claim, which it did not.... Golden Pacific's mistake argument must be rejected.

15 F.3d at 1075–76. In the related tort litigation, the District of Columbia Circuit stated with respect to the suggestion of money damages to remedy alleged mistakes in the administration of the banking laws:

The [bank regulator], incident to his responsibilities, must make innumerable subtle judgments in describing the content of safe and sound bank practices—judgments that draw upon a mix of law, accounting, bank custom, and policy. Sometimes, as here, those determinations must be made under grave pressure and expeditiously. The government is not liable in damages merely because in a particular case the [regulator's] conclusion or some aspect of it turns out to be legally vulnerable.

*Golden Pac. Bancorp v. Clarke,* 837 F.2d at 512.

## B

To the extent that plaintiffs allege ill will, bad faith or intentional misconduct on the part of government regulators or other actors in the seizure and liquidation process, their claim is tortious in nature. A tort claim in this court and in this context leaves plaintiffs with two problems. First, this court lacks jurisdiction to entertain tort claims, *see* 28 U.S.C. § 1491(a)(1) & 1346(a)(2). Second, on the merits, two federal courts of appeal have squarely held that misconduct of the type alleged by plaintiffs here falls within the discretionary-function exception of the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2680(a) (excluding from FTCA coverage "any claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused".) *Franklin Sav. Corp. v. United States,* 180 F.3d 1124, 1141–42 (10th Cir.), cert. den. —— U.S. ——, 120

S.Ct. 398, 145 L.Ed.2d 310 (1999) (acknowledging that the discretionary-function exception amounts to an irrebuttable presumption that discretion is exercised in good faith); *Golden Pac. Bancorp v. Clarke*, 837 F.2d at 511–12.

A bank seized because, in the judgment of regulators, it is insolvent or engaged in unsafe or unsound practices is not entirely without remedy. If the management of a seized institution believes that a mistake has been made or that regulatory misconduct has occurred, an action for removal of the conservator or receiver may be immediately prosecuted pursuant to 12 U.S.C. § 1464(d)(2)(B) in a federal district court which may order that control of the bank be returned to its owners. Indeed, as recounted above, this potential avenue for relief was taken by plaintiffs. *See Franklin Sav. Ass'n v. Director of The Office of Thrift Supervision*, 742 F.Supp. 1089, 1124–26 (D.Kan.1990), *rev'd*, 934 F.2d 1127, 1138 (10th Cir.1991), *cert. den.* 503 U.S. 937, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992). But "just compensation" for a taking is not an available remedy.

### C

We conclude that to the extent that FSC and FSA assert a Fifth Amendment taking claim, it must be dismissed for failure to state a claim upon which relief may be granted.

### III

In their second count, Compl. ¶¶ 43–46, plaintiffs vaguely assert a breach of contract claim. Without citing any specific provision, plaintiffs state that FSA's deposit-insurance contract with the Federal Savings and Loan Insurance Corporation (FSLIC) required that the government act in good faith in the performance of the contract and that it failed to do so.

The plaintiffs state: "Long before the events set forth in this Complaint, FSA entered into a contract with FSLIC in order to obtain deposit insurance." Comp. ¶ 46. Plaintiffs assert that

the government's position regarding the operations and management of FSA in the absence of any changed conditions in those operations and management over the course of several years and the complete absence of any advance notice to FSA of the government's reversal of position constitutes a violation of the terms of the contractual relationship between the parties.

Comp. ¶ 46. At oral argument, plaintiffs elaborated:

Our contract claim is not simply limited to the implied duty of good faith and fair dealing. When you look at our contract claim ... [i]t says that the things that they did [as alleged in taking-claim count] breached their contract with us and that they also violated the implied duty in the contract of good faith and fair dealing.

Let's take GAAP capital. We contract with [the government] that we get insurance.... They regulate us under the GAAP standard. If we have adequate capital, we can continue to operate the institution. When [the federal regulators] ... deprive us of our contract right to include GAAP capital they have taken something from us [and breached the contract].

. . . .

... [The federal regulators] breached that contract by taking away part [i.e., $110 million] of that capital.

Tr. (11/9/99) at 47–49.

Defendant maintains that plaintiffs cannot sustain a breach of contract claim because (1) defendant's good faith conduct has already been established in the litigation challenging appointment of a conservator for FSA, *see Franklin Sav. Ass'n v. Director, Office of Thrift Supervision*, 934 F.2d 1127 (10th Cir. 1991), *cert. den.* 503 U.S. 937, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992), (2) plaintiffs do not point to a specific provision of the contract, and (3) the government's sudden change in position should be anticipated in a heavily regulated industry such as banking. Def. Br. (4/12/99) at 28–31; Def. Rep. Br. (7/22/99) at 12–16.

We are addressing a motion to dismiss the contract claim for failure to state a claim upon which relief may be granted. "[A] motion for judgment on the pleadings should be

granted only where 'it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of his claim.'" *Owen v. United States,* 851 F.2d 1404, 1407 (Fed.Cir.1988)(en banc)(quoting *Branning v. United States,* 215 Ct.Cl. 949, 950, 1977 WL 9606 (1977)).

The contract upon which plaintiffs rely was not attached to the complaint and is not otherwise in the record as yet. We decline to dismiss the contract claim as a matter of law at this juncture. We believe that any judgment on the merits of the contract claim would be premature if made before examination of the specific contract terms relied upon. Thus, with regard to the second count of plaintiffs' complaint, defendant's motion will be denied without prejudice to defendant's right to raise the issue again upon a more complete record.

### IV

Based on the foregoing, it is ORDERED (1) that defendant's motion filed April 12, 1999 to dismiss this case with respect to count I of the amended complaint (the taking claim) is GRANTED and (2) that defendant's said motion, with respect to count II of the amended complaint (the contract claim), is DENIED WITHOUT PREJUDICE.

Judgment with respect to count I of the amended complaint (the taking claim) shall be withheld pending resolution of all other dispositive issues.

The deadline for filing an answer or other response to the amended complaint (exclusive of count I) filed on September 30, 1998 is Wednesday, May 31, 2000.

The parties are requested to consider the following items for eventual discussion pertaining to the contract claim:

1. Who is the legal owner of the contract claim, e.g., FSA, its receiver, a trustee-in-bankruptcy or FDIC?

2. If not FSA, is the legal owner of the contract claim an indispensable party?

3. Is FSC asserting its own independent contract claim? (Presumably not.) To the extent that plaintiffs are asserting a claim of FSA, is a trustee or receiver or the FDIC a "person needed for just adjudication" as the phrase is used in the title of RCFC 19?

4. Given that FSA was liquidated in receivership, is there an issue whether any recovery by or on behalf of FSA would be applied pursuant to the order of priority set forth in 12 U.S.C. § 1821(d)(11)(A)?